Argued June 26, reversed and remanded July 3, 1917.

## STEWART *v.* KING.

(166 Pac. 55.)

Corporations — Subscription Agreement — Construction — "Denouncement."

1. An instrument, reciting that two persons have "denounced" ten mineral claims in the state of Panama, and stating that the owners of the oil field offer a one-third interest payable on receipt of a telegram from one of them that an opportunity is open to subscribe for stock in the proposed company, and providing for a preliminary payment to be telegrahed to the order of such owner, the balance to be due and payable as soon as the first lease shall be drawn which would bind the lessee to drill and develop the land, and that as soon thereafter as the survey was completed and titles obtained, there should be organized an ownership company to own and control the company, and stock issued to different subscribers in proportion to the amounts subscribed and paid in, and providing that the signer subscribes the amount set opposite his name to the Panama oil fund, amounted to a preliminary subscription to the stock of a corporation to be organized as a holding company for the purpose of exploiting the oil property; a "denouncement" being a claim to work an alleged abandoned mine, reported to the authorities or the report of the discovery and pre-emption of and claim to a new mine.

Corporations—Right of Stockholders—Action Against Promoters.

2.   Where a person made a preliminary subscription to stock of a corporation to be organized and the money was applied to fully paying up the shares of stock which were issued, the money so paid became funds of the corporation in the hands of the promoters; and, in the absence of any showing that the corporation has been remiss in its duty, or its controlling officers have refused to act, such person has no cause of action against one of the promoters directly for a recovery of his money paid on the ground that such promoter has never caused land to be conveyed to the corporation as contemplated.

[As to promoters and their relations with corporations, see notes in 17 Am. St. Rep. 161; 85 Am. St. Rep. 385.]

Corporations — Stockholders — Action Against Promoter — Necessary Parties.

3.   In an action by one who subscribed for stock before the formation of a corporation, against one of the promoters who received the money, another promoter, who did not receive any of the money sought to be recovered, was not a necessary party defendant merely because he has an interest in the embryo title to the land.

Trusts—Trust Agreement Concerning Land—Statute of Frauds.

4.   In view of Section 804, L. O. L., providing that no estate or interest in real property other than a lease for a term not exceeding one year, nor any trust or power concerning such property can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, etc., in an action by a subscriber to corporate stock against a promoter to recover amount paid, the defendant could not rely upon a trust agreement regarding the property executed by other stockholders which the plaintiff did not sign.

Corporations—Stockholders—Action Against Promoters—Defense.

5.   In an action by a subscriber to stock against one of the promoters of the corporation to recover the money paid, on the ground that defendant had not secured title to oil lands and conveyed the same to the corporation as agreed, the fact that defendant and the other promoter had been diligent in their efforts to acquire title was not a defense, in the absence of a showing when they should have acquired title.

From Jackson: FRANK M. CALKINS, Judge.

Action by W. H. Stewart against George F. King. From a decision sustaining plaintiff's demurrer to the pleas of abatement claimed by defendant and the resulting judgment as prayed for by reason of defendant refusing to further plead, the defendant appealed. Reversed and remanded.

Department 1. Statement by MR. JUSTICE BURNETT.

This action is founded upon a writing attached to the amended complaint as "Exhibit A," which in the preamble recites in substance that George F. King and Rox Underwood have denounced ten mineral claims near Garachine in the State of Panama, and gives a general description with reference to its situation in respect to navigation and as to its containing many oil springs. Then follows this language:

"The owners of this oil field offer a one-third interest in the same which be free and clear of any incumbrance for the sum of $20,000.00 payable as follows: Upon receipt of a telegram from Geo. F. King stating that the opportunity is open to subscribe for stock in the proposed Panama Oil Company, then five per cent of the full amount of $20,000.00 or $1,000.00 is to be telegraphed to the order of Geo. F. King, and the balance will be due and payable as soon as the first lease is drawn and signed which will bind the lessee to drill and develop the land which is leased to the lessee, (the terms of said lease cannot be determined at the present time). As soon thereafter as the survey is completed and the titles obtained, there shall be organized an ownership company to own and control the property, and stock issued to the different subscribers in proportion to the amounts subscribed and paid in. The amount of taxes upon mineral claims in Panama is $100.00 gold per claim per annum.

"I hereby subscribe the amount set opposite my name to the Panama Oil Fund."

The complaint itself avers that the defendant represented to the plaintiff and the assignor of the latter that he had made the denouncements mentioned; that he would secure title to the lands within ninety days from that time and that he solicited from the plaintiff the payment of $1,000 which would make him a proportionate owner in the mineral rights to the lands.

He further charges that acting upon said representations he signed "Exhibit A" subscribing $1,000 in a corporation to be organized, and paid to the defendant that amount of money. The complaint declares that "the said corporation was organized and shares of stock were issued by said corporation to the said several parties in proportion to the several payments made by the said named parties respectively to said defendant."

Contending that the defendant has never secured title to the lands, nor caused the same to be conveyed to the corporation, nor repaid the money to plaintiff, although duly demanded, the plaintiff asks judgment for $1,000 and interest thereon from the date of its payment to the defendant. In almost identical terms the plaintiff sets out a like transaction between the defendant and the plaintiff's assignor.

Without denying any of the allegations of the complaint, the defendant sets up what he styles four pleas in abatement. The first is to the effect that in pursuance of the terms of "Exhibit A" attached to the complaint the corporation was organized by the parties signing the paper, including the plaintiff and his assignor; that they subscribed for stock therein to the extent of the amounts they had paid and the shares were issued to them as fully paid up and nonassessable. The second plea is to the purport that the transactions had in pursuance of "Exhibit A" were not only with the defendant, but with Underwood, who is a necessary party to the suit. The third is in substance that the plaintiff and his associates became dissatisfied with the delay in acquiring title to the lands owing to dilatory tactics employed by the authorities in Panama; that the defendant called together all the

85 Or.—2

signers of "Exhibit A," including the plaintiff and his assignor, and arranged with them that the defendant should convey to a trustee, to be named by them, certain lands of the defendant of the value of $30,000 in trust for their benefit, to be sold by the trustee and the proceeds applied to the repayment of the sums of money subscribed when it should be ascertained that title to the Panama realty could not be acquired, in pursuance of which the defendant executed the deed, placed it in the hands of the trustee, appointed by the subscribers, who accepted the same and placed it upon record; but that having accomplished this the plaintiff and his assignor refused to execute the correlative agreement; that the parties who did execute this contract are unwilling to release the land and desire to retain it for security for the purposes mentioned in the trust deed, in consequence of which the plaintiff is estopped to maintain this suit. The last plea is to the effect that after the signing of "Exhibit A" the defendant and Underwood, mentioned therein, proceeded with diligence to acquire title from the State of Panama to the lands in question; that owing to the delay in legislation in that State and litigation in which the defendant and Underwood have prevailed thus far, the title has not been acquired, although they have made earnest efforts to that end; and that on account of this the instant action is premature.

The plaintiff's demurrer to these several pleas being sustained and the defendant having refused to plead further, the Circuit Court rendered judgment conformably to the prayer of the complaint and the defendant appeals.          REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Alfred E. Reames.*

For respondent there was a brief and an oral argument by *Mr. Gus Newbury.*

MR. JUSTICE BURNETT delivered the opinion of the court.

According to recitals of "Exhibit A" the defendant and Underwood had what is known in Spanish and Mexican mining law as "denouncements" of certain mineral lands. In the sense in which it is used in the instant case the term is defined by the Standard Dictionary as

"(1) To report a mine to the authorities as unoccupied or abandoned; hence, to claim the right to work a mine. (2) To report the discovery of and preempt; claim, as a new mine."

1. It thus appears that the defendant and Underwood claimed some initial rights in the property in question. Taken by its four corners "Exhibit A" amounts to a preliminary subscription to the stock of a corporation to be organized as a holding company for the purpose of exploiting the property. The so-called plea in abatement shows that the money was not only paid, but that by agreement of those paying it they formed the corporation and applied the money subscribed to fully paying up their shares of stock which were issued to them, and they still own and hold them.

2. Under these circumstances the money paid for the shares became funds of the corporation in the hands of the defendant as one of its promoters. As stated in *Wills* v. *Nehalem Coal Co.,* 52 Or. 70, 77 (96 Pac. 528), in treating of the relationship between the promoter and a corporation:

"Whenever the breach of trust consists in a wrongful dealing of any kind, or manner, with corporate property or with corporate franchise, the corporation

itself is primarily interested and must institute and maintain any equitable suit to redress the wrong, while, on the other hand, whenever the acts of the directors are of such a nature that they directly and primarily affect the interests of stockholders in their shares of stock, by diminishing its value, or otherwise impairing their proprietary rights in it, then the stockholders are directly injured and are primarily interested. Money or property received by a corporation in payment of stock subscribed and money due for stock subscribed is the property of the corporation, and constitutes its assets, and therefore any act of the directors unlawfully disposing of or dealing with such property is primarily an injury to the rights of the corporation."

The doctrine of that case is to the effect that in the first instance the corporation itself must sue to recover its money in whatever adverse custody it may be, and that in the absence of an actual or virtual refusal of the officers of the concern to act no such litigation will lie at the behest of the stockholder. There is no showing here that the corporation itself cannot or will not act, or that its officers prevented or refused action to recover the money subscribed for its stock. According to the first plea in abatement the plaintiff put his money into the scheme pursuant to his subscription and the organization of the concern. Under the circumstances disclosed by the first plea the plaintiff must work out his remedy through the agency of his own creature, the corporation. He got what he subscribed for, the paid-up shares in the business. It is for the organization thus created to effect the collection of its funds and the acquisition of title to the property. In the absence of any showing that it has been remiss in its duty, or that its controlling officers refuse to act, there is no cause of suit or action by the plaintiff against the defendant directly.

3. As to the second plea in abatement claiming that Underwood is a necessary party defendant, it is sufficient to say that it does not appear that he received. any of the money which the plaintiff seeks to recover; and the mere fact that he has an interest in the embryo title to the lands does not affect the cause of action for the money said to be in the hands of the present defendant.

As to the third plea, it is disclosed that the plaintiff and his assignor refused to execute the trust agreement or to accept the provisions of the deed of trust.   This is tantamount to a statement that there is no agreement in writing covering the subject.   The matter is governed by Section 804, L. O. L., reading thus:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

4. The plea is a virtual confession that the defendant has alleged something at law which he cannot prove under the statute, on account of which the demurrer to that plea should be sustained.

5. Last of all the plea to the effect that the defendant and Underwood have been diligent in their endeavors to acquire title but have not yet been able to effect their purpose, is not controlling in the premises. There is nothing stated in that plea about any time within which they should acquire title, and mere diligence will not affect the case.   The demurrer was properly sustained to all the pleas except the first.   That one constitutes a good defense to the action and is not

amenable to the plaintiff's attack upon it. The judgment will therefore be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.