[No. 35330.    Department One.    September 1, 1960.]

CHARLES F. RIDDELL *et al.*, *Respondents*, v. CASCADE PAPER COMPANY, INC., *Appellant*.[1]

*Erik Froberg*, for appellant.

*C. William Golding*, for respondents.

OTT, J.—The Cascade Paper Company was incorporated in December, 1956. The stock of the corporation was entirely subscribed for by its incorporators. Shares of stock were issued to the stockholders as they paid their stock subscriptions. When the corporation was formed, the stockholders entered into an agreement among themselves to keep it a closed corporation. The agreement provided that the stock of any shareholder who left the corporation volun-

[1]Reported in 355 P. (2d) 3.

tarily, or involuntarily by a majority vote of the stockholders, would be purchased by the remaining stockholders pro rata within a certain time. The price to be paid for the retiring shareholder's stock was to be determined by a formula which approximated the book value at the time of his retirement.

By September 30, 1957, the shareholders had paid upon their stock subscriptions the following amounts:

| | Total Subscription | Amount Paid | Shares of Stock Issued |
|---|---|---|---|
| Paul H. Olsback | $25,000 | $15,000 | 1,500 |
| Bert W. Meurling | 15,000 | 8,000 | 800 |
| Charles R. Smith | 5,000 | 2,500 | 250 |
| Kenneth J. Campbell | 10,000 | 7,500 | 750 |
| | $55,000 | $33,000 | 3,300 |
| Howard M. Buck | $40,000 | $20,000 | 2,000 |
| Barney G. Cole | 5,000 | 1,400 | 140 |
| | $45,000 | $21,400 | 2,140 |

On that date, Buck paid $12,500 to the corporation upon his stock subscription (for an additional 1,250 shares at par value), and received a stock certificate representing 3,250 shares, which included his previous 2,000 shares. The book value of the corporate stock at that time was less than par.

Dissension relating to internal affairs of the corporation arose among the shareholders. They aligned themselves into two groups—Olsback, Meurling, Smith, and Campbell on the one side, and Buck and Cole on the other. President Olsback called a stockholders' meeting for October 9, 1957. The sole purpose of the meeting was to oust Buck from the corporation, as provided by the stockholders' agreement, and to permit the remaining stockholders to exercise their right to buy Buck's stock, pro rata, at the then below par price. Buck was present at the meeting and attempted to vote his 3,250 shares of stock. President Olsback ruled that Buck could vote only 2,000 of his shares. By so ruling, President Olsback's faction was represented at the meeting by 3,300 shares, and Buck and Cole by 2,140. Buck was ousted from the corporation.

Buck immediately commenced a mandamus action to compel recognition of his right to vote all of his stock. He joined as defendants the corporation and the individual shareholders. Buck prevailed in the mandamus action, and the attempt to oust him from the corporation was adjudicated null and void. The court, however, stayed the issuance of the writ for a period of thirty days after October 30, 1957, thus giving the Olsback faction an opportunity to pay all or any part of the individual stock subscriptions and thereby regain control of the corporation. No appeal was taken from the judgment. None of the stockholders made any further payments, no additional shares were issued, and Buck retained control of the corporation.

The law firm of Riddell, Riddell & Williams represented the corporation, and the defendants Olsback, Meurling, Smith, and Campbell in their individual capacities, in the mandamus proceeding. The firm had performed certain legal services for the corporation from September 20, 1957, to October 9, 1957, for which it had not been paid. After Buck gained control, the firm performed no further legal services for the corporation.

The law firm instituted this action to recover from the corporation the reasonable value of its services from September 20, 1957, to January 8, 1958, in the sum of two thousand dollars, plus the costs it had advanced in the mandamus action.

The corporation appeared and moved that the individual shareholders, Olsback, Meurling, Smith, and Campbell, be made parties defendant. The court refused to order the individual stockholders joined as parties defendant. The corporation then moved to file an amended answer and cross-complaint against Olsback, Meurling, Smith, and Campbell as cross-defendants. The court also denied this motion. The cause then proceeded to trial against the defendant corporation alone.

After a trial on the merits, the court entered judgment against the corporation for the full amount of the attorneys' fees and costs. The corporation has appealed.

Appellant makes sixteen assignments of error. Its principal contention is that the court erred in holding that it was liable to respondent law firm for attorneys' fees for the defense of the mandamus action, and for services rendered subsequent thereto.

■ We have recognized the rule that, when a minority stockholder prosecutes an action, the benefit of which inures to the corporation, he is entitled to recover reasonable attorneys' fees and disbursements from the corporation. However, when the benefit is not to the corporation, but inures to the stockholder individually, we have held that he is not entitled to attorneys' fees and costs from the corporation. *Boothe v. Summit Coal Mining Co.*, 72 Wash. 679, 131 Pac. 252 (1913); *Joyce v. Congdon*, 114 Wash. 239, 195 Pac. 29 (1921); *Tefft v. Schaefer*, 136 Wash. 302, 239 Pac. 837, 239 Pac. 1119 (1925). It follows that, if the benefit from the defense of a suit inures to the stockholders individually, rather than to the corporation, the attorneys' fees incurred in the defense are not properly chargeable to the corporation.

In 152 A. L. R. 924, the rule is stated as follows:

"It has frequently been held or recognized that a corporation was not chargeable with attorneys' fees or other expenses incident to the defense of such a controversy respecting the internal affairs of the corporation, where directors or other officers of the corporation were the principal defendants, and a successful defense would result in no benefit, or only nominal benefit, to the corporation itself."

In 13 Am. Jur. 514, § 471, it is stated that:

" . . . Of course, if the case is merely a war between discordant stockholders to promote their individual emoluments, and not for the immediate benefit of the corporation, counsel fees cannot be properly allowed out of the corporate funds."

The question for our determination then is whether the mandamus action was defended for the benefit of the corporation, or whether the defense was for the benefit of the individual defendant stockholders in the struggle for control of the corporation.

■ The primary purpose of the defense of the mandamus action was to enable the individual defendants to

retain control of the corporation and thereby insure their continued employment, their ouster of Buck, and their purchase of his stock at a below par price. The action was "merely a war between discordant stockholders to promote their individual emoluments." A successful defense would have benefited the individual defendants only. The corporation was not a party to the stockholders' agreement which was the basis of the litigation. The corporation received no pecuniary benefit from the mandamus action. It was only a nominal party defendant.

Under these circumstances, the court erred in holding the corporation liable for the attorneys' fees and expenses incurred in the mandamus action, and for that portion of the fees charged to it subsequent thereto.

The judgment is reversed. Appellant will recover costs on this appeal.

MALLERY, DONWORTH, FINLEY, and HUNTER, JJ., concur.