Argued April 1, reversed and remanded June 26, 1975

KRAUSE ET VIR, *Appellants, v.* MASON ET AL,
*Respondents.*

537 P2d 105

*Charles Robinowitz,* Portland, argued the cause and filed a brief for appellants.

No appearance for respondents.

BRYSON, J.

Plaintiffs, owners of 50 percent of the common shares of Golden Age Distributors, Inc., an Oregon corporation (hereinafter Golden Age), filed this derivative suit on behalf of the corporation against defendants Mr. and Mrs. Mason, owners of the remaining 50 percent of the common shares, for (1) the nonpayment for stock issued to the defendants; (2) the conversion of corporate assets; and (3) attorney fees.

The trial court decree and judgment required defendants to pay for the shares of the stock issued to them by the corporation but denied relief on the remaining two issues. Plaintiffs appeal. Defendants did not appear or file a brief in this court.

Defendants Mr. and Mrs. Mason had been engaged in the sale of carpets in Oregon for several years under the name of "Mason Custom Carpets." In March of 1973 defendants approached plaintiffs regarding a business venture for the distribution and sale of "area carpets" (carpets cut and bound—not wall-to-wall) in the northwest. Thereafter, the parties formed an Oregon corporation, Golden Age Distributors, Inc., for the purpose of carrying on such a business and executed the Articles of Incorporation on March 28, 1973. The "Certificate of Incorporation" was issued by the Corporation Commissioner on April 2, 1973.

According to the testimony and exhibits received showing the organization of the corporation, and the minutes thereof, it was agreed that each of the four parties would be issued 5,000 common shares in Gold-

en Age in exchange for $5,000 in cash or its equivalent.[1] Mrs. Krause and the attorney who prepared the incorporation documents testified that the parties had agreed to this plan prior to the execution of the formal corporate documents.

The dispute in this case arises from events which occurred immediately after the execution of the Articles of Incorporation. On Friday, March 30, 1973, before a corporate bank account was established, Donald Mason informed plaintiffs that he was flying to Georgia that weekend to purchase carpets for Golden Age. As a result, plaintiffs gave Mason $7,900 of their personal funds "in order for Mr. Mason to have the money to purchase carpets for Golden Age Corporation." This sum was part payment by the plaintiffs for their corporate shares.

However, Mr. Mason appropriated some of this money for defendants' own use in the operation of their "Mason Custom Carpets." The testimony of defendant Donald Mason best explains this event:

"THE COURT: So the $7900 that you got from the Krauses was used to purchase carpet which went into Golden Age Distributors and Mason Carpets?

"THE WITNESS: Yes, sir.

"* * * * *.

"Q [By counsel] Mr. Mason, of this total sum * * * has any of that been sold?

"A Yes, sir.

"Q And it was sold by you?

"A Yes, sir.

"Q And your business is Mason Custom Carpets?

"A Yes, sir.

[1] According to the minutes of the corporation organization meeting, as ratified in writing by all of the parties, plaintiffs were each to contribute $5,000 in cash and defendants were each to contribute 1,000 carpets having a value of $5,000.

"* * * * *.

"Q In other words, you kept the money for your own business?

"A Yes, sir.

"* * * * *.

"THE COURT: As I get your testimony, you have sold some carpet which was originally purchased with Golden Age's money?

"THE WITNESS: I have sold some carpet that was purchased out of that $7900, yes, sir.

"THE COURT: How much of it would you say?

"THE WITNESS: I can't—I don't know how much of that I have sold. There has been some of it replaced out of my stock.

"THE COURT: All of it you have sold you have replaced out of your own stock?

"THE WITNESS: Some of them, yes, sir.

"* * * * *.

"Q [By counsel] When you sold the carpet, you made a profit?

"A When I sell carpet, I make a profit."

Thereafter, on or about April 19, 1973, Nancy Krause approached Donald Mason "for an account of where the rest of the money was, where his contribution was, where were the profits going from the carpeting he was selling. He told me if I didn't like what was going on to get out and stay out" and "to get an attorney."

Plaintiffs first assign as error the trial court's ruling which permitted defendants to retain the profits which defendants admit they obtained from the sale of Golden Age's carpets. From examining the record, we note that the trial court construed plaintiffs' complaint as an action for common law conversion rather than a shareholder's derivative suit for the

breach of a fiduciary duty. As a result, the trial court denied recovery because "plaintiffs * * * did not sustain the burden of proof that defendants * * * converted certain assets of the Corporation" and because "[t]his is not a case in which the corporate assets have been dissipated and cannot be accounted for * * *." As hereinafter discussed, we find the complaint properly alleges a derivative suit on behalf of plaintiffs-shareholders.

■ Defendants' fiduciary duty was breached when defendants used plaintiffs' capital contributions to purchase carpets for their own Mason Custom Carpets and when carpets rightfully belonging to Golden Age were sold by defendants for their private gain.

■ Defendants were promoters of Golden Age, *Daly v. Jackson,* 226 Or 471, 477-78, 360 P2d 542 (1961); *Sherwood & Roberts-Oregon, Inc. v. Alexander,* 269 Or 389, 525 P2d 135 (1974), and owed a fiduciary duty to Golden Age. *Wills v. Nehalem Coal Co.,* 52 Or 70, 77, 96 P 528 (1908); *see also Stewart v. King,* 85 Or 14, 19, 166 P 55 (1917). In addition, Donald Mason knew that the $7,900 which he obtained from plaintiffs constituted a portion of plaintiffs' consideration for shares of Golden Age stock and was to be used for the purchase of Golden Age's inventory of carpets.

> "It is the duty of the promoters to retain in their hands the property which is to constitute corporate assets until the corporation is formed, * * * and then to turn over to it the assets so held." 1 Fletcher, Cyclopedia of Private Corporations § 192 at 731-32 (rev ed 1963); *accord,* 18 CJS Corporations § 144.

■ Generally, fiduciaries, such as defendants, are liable to account for any gain or profits which they may realize from their breach of a fiduciary duty. *See* Henn, Law of Corporations § 235 (2d ed 1970); Restatement of Trusts §§ 205-06, 208 (1935); *Park*

*City Corp. v. Watchie*, 249 Or 493, 500-01, 439 P2d 587 (1968) (promoter's secret profits from sale of property to corporation). *Cf. Marnon v. Vaughan Motor Co., Inc.*, 184 Or 103, 168-70, 194 P2d 992 (1948) (agent's secret profit); *Starr v. International Realty, Ltd.*, 271 Or 396, 533 P2d 165 (1975) (partner's secret profit).

▌▌ The mere fact that defendants in this case may have subsequently replenished the corporation's supply of carpets with like physical assets does not entitle defendants to retain the profits which they made as a result of their original wrongful conduct. If the physical assets in this case were no longer physically recoverable, defendants would be liable for the entire proceeds of the various sales, including the value of the assets sold and any gain derived therefrom. To permit defendants to retain the profits in this case would reward them for their own wrongdoing. We conclude that the trial court erred in not requiring defendants to account for any profits they may have realized as a result of their breach of duty to the corporation.

Plaintiffs next assign as error the trial court's allowance of a credit in favor of defendants for storage fees incurred by defendants in warehousing Golden Age's carpets. Plaintiffs contend that the credit should be disallowed because defendants "prevented the corporation from disposing of the carpets or storing them at lower costs."

There is no evidence that Golden Age would have been able to dispose of all the carpets or would not have incurred storage fees or would have been able to obtain warehouse space at a lesser expense. In fact, the record shows that Golden Age was to conduct a substantial amount of its activities on the premises of Mason Custom Carpets, defendants' private business, including storage.

■ Under these facts, it is reasonable that Golden Age be liable for carpet storage fees. Although the parties entered into an agreement that defendants would receive $200 per month for carpet storage, the trial court reduced this figure to $150 per month. We find no error in this respect.

Plaintiff's last contention is that the trial court erred in not awarding them reasonable attorney fees. Plaintiffs rely on *Gilbert v. Hoisting & Port. Engrs.*, 237 Or 130, 384 P2d 136, 390 P2d 320, *cert denied* 376 US 963, 84 S Ct 1125, 11 L Ed 2d 981 (1964) and *Pickinpaugh v. Morton*, 268 Or 9, 519 P2d 91 (1974), wherein we held that a court of equity may, under certain circumstances, award attorney fees in stock derivative suits. *See also Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975).

The trial court denied plaintiffs' request for attorney fees on the grounds that plaintiffs "basically wanted their money back" and had tried the suit as a personal cause rather than a derivative cause of suit.

■ The complaint alleged that "[t]his suit is brought on behalf of all other shareholders similarly situated," and prayed that defendants be required to pay to the corporation, assets worth $5,000 in consideration for the issuance of 5,000 shares of stock and that defendants be required to account to the corporation for the disposition of capital assets and profits. The record shows the case was prosecuted as a derivative suit on behalf of Golden Age and that the corporation realized substantial benefits as a result of the litigation. *See* Henn, *supra,* §§ 358, 360, 362; 13 Fletcher, Cyclopedia of Private Corporations §§ 5939, 5944; 19 Am Jur 2d, Corporations §§ 524, 528. We conclude that plaintiffs should be allowed attorney fees.

■ The general rule is that attorney fees may be

recovered when a derivative suit results in a gain or benefit to the corporation.[2] 13 Fletcher, *supra,* § 6045; Henn, *supra,* § 377; Annot., 39 ALR2d 580; *Gilbert v. Hoisting & Port. Engrs., supra* at 137-38, 142.

■ The trial court's concern with the probable dissolution and liquidation of the corporation should not affect plaintiffs' right to recover reasonable attorney fees in the instant case.

"* * *[T]he recovery by plaintiff of his attorneys' fees and expenses in a successful derivative action is obviously in no way connected with the ultimate use to which a corporation so benefitted may put the net balance of funds recovered as a result of the efforts of plaintiff's counsel." *Wilderman v. Wilderman,* 328A2d 456, 458 (Del Ch 1974).

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[2] There is no evidence or contention raised that plaintiffs, as shareholders, are the sole beneficiaries of this suit. The litigation concerned the affairs of the corporation with shareholders and officers on both sides. There are cases which hold that a court may deny attorney fees to the successful party where the only real benefit recovered enures to the sole and personal advantage of the plaintiff and not to the corporation. *See, e.g.,* Riddell v. Cascade Paper Company, 56 Wash 2d 663, 355 P2d 3, 5 (1960); Leppaluoto v. Eggleston, 57 Wash 2d 393, 357 P2d 725, 734 (1960); Aiple v. Twin City Barge and Towing Co., 279 Minn 22, 154 NW2d 898, 901-02 (1968); Slayton v. Missouri Pacific Railroad Company, 279 F Supp 525, 528 (ED Mo 1968).