Argued and submitted September 11, 2006, decision of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings April 12, 2007

CRANDON CAPITAL PARTNERS,
derivatively on behalf of Willamette Industries,
a nominal defendant,
*Petitioner on Review,*

*v.*

Stuart J. SHELK, Jr.;
Paul N. McCracken; Michael G. Thorne;
Gerard K. Drummond; Kenneth W. Hergenhan;
Robert M. Smelick; Benjamin R. Whiteley;
Winslow H. Buxton; G. Joseph Prendergast;
William Swindells; and Duane C. McDougall,
*Defendants,*

*and*

WILLAMETTE INDUSTRIES, INC.,
*Respondent on Review.*

(TC No. 0011-11691; CA A123575 (Control))

Rae Ann BROWN,
derivatively on behalf of Willamette Industries,
a nominal defendant,
*Petitioner on Review,*

*v.*

WILLAMETTE INDUSTRIES, INC.,
*Respondent on Review,*

*and*

William SWINDELLS;
Duane C. McDougall; Gerard K. Drummond;
Paul N. McCracken; Stuart J. Shelk, Jr.;
Michael G. Thorne; Kenneth W. Hergenhan;
Robert M. Smelick; Benjamin R. Whitely;
Winslow H. Buxton; and G. Joseph Prendergast,
*Defendants.*

(TC No. 0011-11695; CA A123576; SC S53170)

157 P3d 176

Scott A. Shorr, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, argued the cause and filed the brief for petitioners on review. With him on the brief were Gary M. Berne and Steve C. Berman, Stoll Stoll Berne Lokting & Shlachter, P.C.; Edwin A. Harnden, Barran Liebman LLP, Portland; and Justine Fischer, Portland.

John F. Neupert, Miller Nash, LLP, Portland argued the cause and filed the brief for respondent on review. With him on the brief was Bruce L. Campbell.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, and Balmer, Justices.**

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Kistler, Walters, and Linder, JJ., did not participate in the consideration or decision of this case.

BALMER, J.

## BALMER, J.

This shareholder derivative action requires us to decide whether plaintiffs' claim for attorney fees remains justiciable after defendants took actions that rendered the underlying substantive claims moot. For the reasons that follow, we answer that question in the affirmative.

Plaintiffs were shareholders of Willamette Industries, Inc. They filed separate actions against certain of Willamette's officers and directors seeking to remove corporate takeover defenses that Willamette had adopted and to force defendants to negotiate with Weyerhaeuser Co., which had made an offer to acquire Willamette. Before the trial court entered any judgment on the merits, defendants removed the defenses, and Willamette agreed to be (and was) acquired by Weyerhaeuser. Plaintiffs then filed an amended complaint seeking only attorney fees. The trial court ultimately rejected plaintiffs' claim for fees on the ground that it would be inequitable to require Willamette's corporate successor, Weyerhaeuser, to pay those fees. On plaintiffs' appeal, the Court of Appeals vacated the trial court judgment and remanded with instructions to dismiss the case as moot. *Crandon Capital Partners v. Shelk*, 202 Or App 537, 123 P3d 385 (2005). We allowed plaintiffs' petition for review and, for the reasons that follow, reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

I

The facts necessary to decide the single legal issue before us are not in dispute, and we take them from the record and the Court of Appeals opinion. On November 6, 2000, Weyerhaeuser communicated to Willamette's management an offer to purchase all outstanding shares of Willamette for $48 per share, a premium over the share price at the close of the prior trading day. Weyerhaeuser publicly announced the offer on November 13, 2000. On November 15, Willamette's board of directors announced that it had rejected the offer. A 14-month struggle for control of Willamette followed, during which Weyerhaeuser announced a tender offer and engaged in a proxy fight for control of Willamette. Willamette's board

of directors also instituted various corporate takeover defenses. Those defenses included new severance agreements for Willamette's senior management and a shareholder rights plan.[1] In December 2001, Willamette's board of directors began discussions with Georgia-Pacific Corporation (GP) to purchase GP's building products division. Weyerhaeuser indicated that it would withdraw its tender offer if Willamette consummated its purchase of GP's building products division.[2]

Plaintiffs Crandon Capital Partners and Rae Ann Brown began this litigation on November 14, 2000, when they filed separate shareholder derivative actions on behalf of Willamette against Willamette, as a nominal defendant, and the directors of Willamette. Their complaints alleged breaches of fiduciary duty,[3] abuse of control, and waste. The two actions were consolidated on December 20, 2000, and amended complaints in the consolidated action were filed on January 4, 2001, and December 18, 2001. The complaints in the consolidated action, like the initial complaints filed in the two separate cases, did not include separate claims for attorney fees, but they did include requests for attorney fees in the prayers for relief. Plaintiffs sought, in general, to remove Willamette's takeover defenses, alleging that they were unlawful measures to entrench existing management, and to force Willamette's directors to engage in negotiations with Weyerhaeuser. Plaintiffs and Wyser-Pratte Management Company—which had filed a similar action and which is not a party to this appeal—also sought to prevent Willamette's purchase of GP's buildings products division.

In January 2002, prior to the entry of any judgment, Willamette abandoned the proposed purchase of GP's building products division, removed its takeover defenses, and

---

[1] Such measures sometimes are referred to as "golden parachutes" and "poison pills." *See Crandon,* 202 Or App at 541, 541 nn 2-3, for further discussion of those measures.

[2] Willamette's proposed purchase of GP's building products division, which faced substantial asbestos-related liabilities, was labeled a "suicide pill" by plaintiffs because of the alleged negative impact that the purchase would have had on Willamette's value. *See Crandon*, 202 Or App at 541.

[3] Plaintiffs also alleged direct claims for breach of fiduciary duty against Willamette management. Because plaintiffs' claim for attorney fees is based on their shareholder derivative claims, we do not discuss the direct claims further.

accepted Weyerhaeuser's tender offer, which Weyerhaeuser by then had increased to $55.50 per share. The parties signed a definitive merger agreement in late January. Weyerhaeuser then paid a total of about $6.1 billion in cash for all Willamette's outstanding shares, and Weyerhaeuser caused Willamette to be merged formally into a wholly owned subsidiary of Weyerhaeuser on March 14, 2002. Those actions rendered moot the substantive claims in plaintiffs' complaint.

On March 21, 2002, plaintiffs filed a motion for an award of attorney fees on the basis of the request that they had included in the prayer for relief in their second amended complaint. The trial court denied plaintiffs' motion, concluding that the second amended complaint did not adequately state a basis on which the derivative plaintiffs could recover attorney fees and therefore did not comply with ORCP 68. *Crandon*, 202 Or App at 543.

Plaintiffs then moved to amend their complaint to assert an independent claim for attorney fees, and the trial court, over defendants' objections, granted the motion. On October 21, 2002, plaintiffs filed a third amended complaint seeking attorney fees of $24.25 million and asserting that their conduct in filing their shareholder derivative actions had benefitted Willamette and its shareholders by causing the Willamette board to remove the takeover defenses and to agree to sell the company to Weyerhaeuser at a favorable price. Plaintiffs included in their claim for fees an amount representing their time and expenses in preparing the attorney fee claim.

After extensive briefing, the trial court granted defendants' motion for partial summary judgment, dismissing plaintiffs' claim for attorney fees incurred pursuing the attorney fee claim itself. The court also granted the individual defendant directors' motion for summary judgment, which plaintiffs did not oppose, on the ground that the individual directors had no personal liability for the plaintiffs' attorney fees. At that point, only Willamette, representing its successor, Weyerhaeuser, remained as a defendant.

Following an additional hearing, the trial court denied plaintiffs' claim for attorney fees and entered judgment for Willamette. The trial court rejected plaintiffs' claim for two primary reasons. First, as noted, plaintiffs' claim was based on the benefit that their litigation allegedly had conferred on Willamette shareholders and on Willamette itself. However, by the time that plaintiffs filed their claim for fees, Willamette had ceased to exist as an independent corporation and its former shareholders all had received cash from Weyerhaeuser in exchange for their shares. The trial court noted that, in contrast to the actions of shareholder-plaintiffs in a number of similar cases in Delaware, plaintiffs had not asked the court to order that some part of the takeover proceeds be held back to be available to pay a later attorney fee award. According to the trial court, because all the takeover proceeds already had been distributed to Willamette's shareholders, there was no mechanism by which to spread the cost of the litigation to the shareholders who allegedly had benefitted from the litigation. Second, the trial court noted that the only potential source for an award of attorney fees was Willamette's corporate successor, Weyerhaeuser. The court held that it would be inequitable to require Weyerhaeuser (and its shareholders), rather than Willamette (or its shareholders)—the persons on whose behalf plaintiffs had filed their actions—to pay plaintiffs' attorney fees, assuming that such fees otherwise were appropriate.

Plaintiffs appealed, assigning error to the trial court orders denying their claim for attorney fees and denying their claim for fees incurred in preparing the fee petition. Defendant cross-assigned as error four of the trial court's rulings, including the trial court's ruling that the consummation of the merger had not rendered the case moot. The Court of Appeals agreed with defendant's mootness argument, concluding that "plaintiffs' claims became moot when Weyerhaeuser acquired Willamette" and that "[t]he trial court lacked jurisdiction to adjudicate plaintiffs' request for attorney fees." *Crandon*, 202 Or App at 548, 550. The Court of Appeals first noted that the takeover defenses that plaintiffs had sought to remove had been removed, that the business transaction that plaintiffs had sought to facilitate—the merger—had been completed, and that plaintiffs did not seek

to enjoin any future actions. The court then characterized the case as one "where the parties' adverse interests simply ceased to exist[,]" *id.* at 548, and held that the case therefore had become moot.

## II

We begin by describing the basis for plaintiffs' claim for fees, because an understanding of the legal grounds upon which plaintiffs seek attorney fees is central to the mootness issue. We then turn to the parties' arguments as to whether, given the basis for plaintiffs' fee claim, the mootness of the substantive claims that plaintiffs raised also renders their fee claim moot.

On review, plaintiffs argue that the third amended complaint presents a justiciable controversy—an independent equitable claim for attorney fees—and, therefore, that the case did not become moot when Willamette dropped its takeover defenses and agreed to be acquired by Weyerhaeuser. Plaintiffs' claim for attorney fees is based on the theory that a court has the equitable power to award fees to a shareholder who brings litigation that confers a benefit on a corporation or on all of the corporation's shareholders. This court has recognized such a power. In *Krause v. Mason,* 272 Or 351, 537 P2d 105 (1975), the court held that a shareholder who brought a shareholder derivative action on behalf of a corporation could recover its attorney fees from the corporation because "the corporation realized *substantial benefits* as a result of the litigation." 272 Or at 358 (emphasis added).[4] In support of a trial court's equitable power to award

---

[4] The equitable basis for plaintiffs' attorney fee claim often is described as the "substantial benefit" test, and we use that phrase because it is consistent with the words used by this court when it awarded attorney fees to the plaintiff-shareholder in *Krause.* The parties here, and some courts, refer to that equitable theory as the "common benefit" or "corporate benefit" theory. Those terms, however, are less appropriate than "substantial benefit," because the term "common benefit" is easily confused with the related but distinct "common fund" theory for awarding attorney fees, *see* 342 Or at 563 n 5, while the term "corporate benefit" appears limited to proceedings involving corporations and thus would exclude cases such as *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 384 P2d 136, 390 P2d 320 (1963), *cert den,* 376 US 963 (1964). For a general discussion of the substantial benefit theory, see Jennifer L. Berger, Amy M. Hurwitz & Carol A. Jones, 13 *Fletcher Cyclopedia of the Law of Private Corporations* § 6045.01, 316-22 (2004 revised volume).

fees where a party, through litigation, has conferred a common benefit on others, the court in *Krause* cited *Gilbert v. Hoisting & Port. Engrs.*, 237 Or 130, 384 P2d 136, 390 P2d 320 (1963), *cert den*, 376 US 963 (1964), a case in which this court affirmed an award of attorney fees to certain members of a union who had sued on behalf of all the members of the union to correct abuses of the democratic process in their union.

*Krause* also cited several treatises on corporation law before concluding, "The general rule is that attorney fees may be recovered when a derivative suit results in a gain or benefit to the corporation." *Krause*, 272 Or at 358-59. The basis for the award of fees in such circumstances is that, when a shareholder undertakes derivative litigation at its own expense and the corporation realizes "substantial benefits" as a result of the litigation, *id.* at 358, it is equitable to spread the costs of the litigation among those who have benefitted.[5]

Defendant argues that this court's cases hold that, regardless of the legal basis for plaintiffs' fee request, a claim for attorney fees becomes moot if the underlying claims in the litigation become moot. In so arguing, defendant, like the Court of Appeals, relies principally on *Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 738 P2d 1389 (1987), *cert den*, 484 US 1032 (1988), where this court held that an action for declaratory and injunctive relief against inclusion of a formal prayer at a 1984 public high school graduation ceremony was moot as soon as the graduation ceremony was completed. 303 Or at 579. Because the action in *Kay* became moot after that graduation ceremony had been held, and the trial court had not entered any order or judgment on the merits by that time, this court held that the trial court had no jurisdiction to enter a judgment on the merits or to make an award of attorney

---

[5] As that description demonstrates, the substantial benefit theory for seeking attorney fees is similar, in some respects, to the "common fund" theory. Under the common fund theory, which we describe in greater detail below, "plaintiffs whose legal efforts create, discover, increase, or preserve a fund of money to which others also have a claim, may recover the costs of their litigation, including their attorney fees, from the created or preserved fund." *Strunk v. PERB*, 341 Or 175, 181, 139 P3d 956 (2006). Plaintiffs do not seek an award of fees under the common fund theory.

fees, but had jurisdiction to only dismiss the action as moot. *See id.* at 579 ("The circuit court should have dismissed the proceedings after the commencement exercises were over.").

Defendant, like the Court of Appeals, reads *Kay* to mean that, if the merits of a case become moot before a judgment is entered, any dispute over attorney fees also is moot. Plaintiffs, however, argue that *Kay* does not foreclose their claim for fees because the legal grounds for the fee request in *Kay* required that the plaintiffs obtain a judgment in their favor on the merits, while the basis for plaintiffs' fee claim here—the substantial benefit theory—includes no such requirement. Plaintiffs note that the fee request in *Kay* was based on (1) a court's equitable authority to award fees when a plaintiff has vindicated important constitutional rights on behalf of the public, as this court articulated in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975), and (2) 42 USC section 1988, which authorizes the award of fees to a plaintiff who brings a successful civil rights claim under 42 USC section 1983. *Kay*, 303 Or at 578 n 2 (describing those two grounds for plaintiffs' fee request). Plaintiffs assert that a party may recover fees under those two theories only if the party obtains a favorable judgment on the merits. In contrast, plaintiffs argue, because their litigation allegedly conferred a substantial benefit on Willamette and its shareholders, they may proceed with their attorney fee claim, even in the absence of a judgment on the merits in their favor. Indeed, under plaintiffs' theory, the very actions of Willamette management that caused plaintiffs' substantive claims to become moot—the removal of the takeover defenses and the agreement to be acquired by Weyerhaeuser—provide the basis for their attorney fee claim.

■ For plaintiffs here to avoid dismissal of their attorney fee claim on mootness grounds, they must be correct that, in contrast to fee claims under *Deras* or under statutory provisions requiring that the plaintiff be a "prevailing party," their attorney fee claim based on conferring a substantial "gain or benefit" on those on whose behalf they sued survives even when the substantive claims in their complaint become moot. Both parties recognize that this is an issue of first impression for this court.

Plaintiffs note that, in *Krause*, this court stated that fees could be awarded in a shareholder derivative case "when a derivative suit results in a gain or benefit to the corporation," *Krause*, 272 Or at 359, without suggesting that the "result," *i.e.*, the gain or benefit, had to be accomplished by means of a judgment. Plaintiffs acknowledge that the plaintiffs in *Krause had* obtained a judgment. They argue, however, that the logic of the rule that attorney fees may be awarded in a shareholder derivative case also supports the awarding of such fees even in the absence of a favorable judgment on the merits. They emphasize that it would be inequitable to deny fees to a shareholder-plaintiff on mootness grounds when the same conduct of the defendant that mooted the plaintiff's substantive claims was the conduct that conferred the benefit on the corporation and its shareholders. Plaintiffs urge the court to follow decisions from other jurisdictions holding that a fee claim in a shareholder derivative action does not require a favorable judgment on the merits. To evaluate that part of plaintiffs' argument, we first turn to a consideration of the equitable principles that underlie the awarding of attorney fees when a plaintiff initiates litigation that benefits similarly situated parties. We then briefly address cases from other jurisdictions.

### III

This court for many years has recognized an equitable exception to the American rule that a party to an action is responsible for its own attorney fees. That exception allows a court to award attorney fees to a party whose legal action has conferred a benefit on others, when it would be inequitable for that party to bear all the costs of the litigation. *See Gilbert*, 237 Or at 137 ("Equity may under some circumstances * * * award attorneys' fees * * * where the plaintiff brings a representative suit on behalf of other members of an organization, as for example where a stockholder brings a derivative suit against a corporation."). In those circumstances, the court may spread the cost of litigation to avoid unjust enrichment to persons who have benefitted from the litigation without shouldering any of the costs, as well as to compensate the party's attorneys for the services that they have rendered.

One form of that equitable doctrine is the "common fund" theory, which this court recently discussed in *Strunk v. PERB*, 341 Or 175, 181, 139 P3d 956 (2006):

> "Under the common fund doctrine, plaintiffs whose legal efforts create, discover, increase, or preserve a fund of money to which others also have a claim, may recover the costs of their litigation, including their attorney fees, from the created or preserved fund. * * * [T]he doctrine is primarily 'employed to realize the broadly defined purpose of recapturing unjust enrichment.' * * * In other words, the doctrine is used to spread litigation expenses among all beneficiaries of a preserved fund so that litigant-beneficiaries are not required to bear the entire financial burden of the litigation while inactive beneficiaries receive the benefits at no cost."

(Citation omitted.) A related equitable basis for the award of attorney fees when one party initiates litigation that benefits others is the "substantial benefit" theory, which we described above. The substantial benefit theory originated in the idea that fees may be awarded when the benefit that was conferred was nonpecuniary and thus provided no fund from which to award fees. This court expressed that view in *Gilbert*, rejecting the defendants' suggestion that no fees should be awarded because the plaintiffs' litigation had produced no pecuniary benefit:

> "Litigation which results in correcting abuses of [the union democratic] process frequently may not give rise to an ascertainable pecuniary benefit. But the fact that no money or property is involved does not detract from the importance of the litigation. Those members of the union who in good faith seek to preserve the internal democracy of their union should not have to bear the expense of a successful suit."

*Gilbert*, 237 Or at 138. In a substantial benefit case (as in a common fund case), fees are awarded not, as in a "prevailing party" case, to make the plaintiff whole by shifting all costs to the wrongdoer, but instead to spread the costs among those on whose behalf the case was brought and who benefitted from the plaintiff's efforts.

This court expressly adopted that equitable rationale for awarding fees in *Gilbert*, and then relied upon *Gilbert*

in holding in *Krause* that a plaintiff in a shareholder derivative action could recover its fees from the corporation whose shareholders benefitted from the litigation. Thus, in *Krause*, this court affirmed an award of fees based on the financial benefit that the plaintiffs' litigation had conferred on the corporation and its other shareholders, even though that litigation did not result in a common fund from which those fees could be paid. As this court stated in *Krause*, the corporation had "realized substantial benefits as a result of the litigation" and therefore "attorney fees may be recovered * * *." *Id.* at 358, 358-59. For that proposition, this court cited not only its earlier decision in *Gilbert*, but also the 1970 edition of Professor Henn's *Law of Corporations*, including section 377 of that treatise. In describing the general rule that a "plaintiff-shareholder is entitled to be reimbursed by the corporation for his reasonable expenses where he has been successful in his derivative action, with consequent benefit to the corporation[,]" Henn also addressed the specific issue presented here:

> "The same rules apply even though the derivative action is not pursued to final judgment, so long as the purpose of the action is accomplished. Thus, a settlement which results in a benefit to the corporation is sufficient for purposes of reimbursement. Also, merely bringing an action and obtaining a temporary injunction may produce the desired benefit."

Harry G. Henn, *Law of Corporations* § 377, 795, 796 (2d ed 1970) (footnotes omitted).

That principle also is recognized in a number of shareholder derivative cases from other jurisdictions. In one of the leading Delaware cases, *United Vanguard Fund v. TakeCare, Inc.*, 693 A2d 1076 (Del 1997), for example, the defendant corporation signed a letter of intent to be acquired for a particular price. The plaintiff-shareholder brought a derivative action to have the letter of intent set aside and the company sold through an auction process. The corporation's board of directors allowed the letter of intent to lapse, proceeded with an auction, and sold the company at a substantially higher price than that contained in the letter of intent. 693 A2d at 1078. Those events rendered the plaintiff's claims moot, but the Delaware Supreme Court nevertheless held

that the trial court could consider whether the plaintiff could recover its attorney fees because of the benefit that its litigation allegedly conferred on the other shareholders. *Id.* at 1079-80.

Similarly, in *Fletcher v. A. J. Industries, Inc.*, 266 Cal App 2d 313, 72 Cal Rptr 146 (1968), the plaintiffs brought a shareholder derivative action arguing that various transactions entered into by the corporation's board of directors constituted breaches of their fiduciary duty. The corporation agreed to restructure its board and management and to rescind some of the transactions. When the plaintiffs requested an award of attorney fees from the corporation, the corporation objected, claiming, *inter alia*, that, because the changes had been a result of settlement rather than a litigated judgment, fees were not available. The California Court of Appeals rejected that argument:

> "It is not significant that the 'benefits' found were achieved by settlement of plaintiffs' action rather than by final judgment. The authorities recognizing the substantial-benefit rule have permitted attorneys' fee awards in settled cases."

266 Cal App 2d at 325, 72 Cal Rptr at 153.

A current treatise also states the general proposition that a court may award fees to a shareholder who brings a derivative claim that benefits the corporation and its shareholders, even if the shareholder does not obtain a judgment:

> "Even without a favorable judgment, the plaintiff is entitled to reimbursement of expenses if the result confers a substantial benefit on the corporation. So, a plaintiff is entitled to recover expenses whenever the defendants settle or take action that produces the same result sought by the derivative proceeding and confers a benefit on the corporation."

Jennifer L. Berger, Amy M. Hurwitz & Carol A. Jones, 13 *Fletcher Cyclopedia of the Law of Private Corporations* § 6045.01, 318-19 (2004 revised volume) (footnotes omitted).

In plaintiffs' view, Oregon cases such as *Krause* and *Gilbert* are consistent with cases from other jurisdictions. Plaintiffs argue that, although the plaintiffs in *Krause* and

*Gilbert* had obtained judgments in their favor, nothing in this court's decisions in those cases suggests that a judgment was a necessary predicate for the award of attorney fees.

We agree with plaintiffs. As discussed above, this court—like courts in many other states—long has held that equitable principles support a claim for attorney fees by a shareholder whose derivative litigation confers a substantial benefit on the corporation and the other shareholders. And, nothing in this court's decisions, in the decisions of other state courts considering the same issue, or in the logic and analysis underlying both, suggests that a judgment in favor of the shareholder is a prerequisite for seeking attorney fees. Rather, virtually every court that has considered the issue has held that actions by the corporate defendant that moot the shareholder's substantive claims do not necessarily moot the shareholder's equitable claim for attorney fees. Contrary to defendant's suggestion, the idea of awarding attorney fees in a shareholder derivative action that becomes moot before judgment is hardly novel and, indeed, is supported by the very authorities that this court relied upon when it awarded attorney fees in *Krause*. Accordingly, we hold that plaintiffs' claim for attorney fees on the equitable ground that its actions conferred a substantial benefit on Willamette and its shareholders did not become moot simply because plaintiffs' substantive claims had become moot.[6] Plaintiffs' claim for attorney fees thus presents a justiciable controversy, and the Court of Appeals erred in vacating the judgment on that ground and ordering the trial court to dismiss the case as moot.

IV

The Court of Appeals based its decision on one of defendant's cross-assignments of error and therefore did not consider plaintiffs' assignments of error or defendant's other cross-assignments of error. We have reviewed, and we

---

[6] We emphasize that this holding is limited to attorney fee claims under this court's longstanding rule permitting a plaintiff in a shareholder derivative case to recover fees when it has conferred a substantial benefit on the corporation or its shareholders. Because of that disposition, it is unnecessary to address the parties' arguments regarding the "prevailing party" statute, ORS 20.077, or the requirements for seeking attorney fees under *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975).

reverse, the decision of the Court of Appeals on the single issue that that court addressed. We express no view on plaintiffs' assignments of error or defendant's remaining cross-assignments of error, and we remand the case to the Court of Appeals for further proceedings based on those assignments.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.