O'Neill et al., Appellants, *v.* United Association of Journeymen Plumbers and Steam-Fitters of United States and Canada et al.

Argued January 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Mark E. LeFever,* with him *Robert G. Kelly, M. Elizabeth Hatton* and *Conlen, LaBrum & Beechwood,* for appellants.

*Francis T. Anderson,* with him *William A. Gray,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 20, 1944:

This suit in equity was instituted by three members of Plumbers Local Union No. 690, of Philadelphia, against the parent United Association of Journeymen Plumbers and Steam-Fitters, its international officers and the local officers appointed by them. A petition to intervene as plaintiffs was filed by 174 members of the local union, to which defendants filed an answer, but no action thereon appears to have been taken by the court below.

The bill avers that, despite the provisions of the Constitution and By-laws of the United Association recognizing the principle of autonomy for local unions and prescribing the manner in which their officers shall be elected by the membership, the United Association and its general officers have, for twelve years, denied such right of election to the members of Local 690. It is averred that the officers of the local union have been appointed and removed by the international officers during this period, and that, in further violation of the fundamental laws of the United Association, no accounting has been rendered to the members of the local union for fees, dues, assessments and other funds. The bill further alleges dictatorial conduct by the appointed officers of the local union and their sponsors, the suspension of local meetings, the suppression of free speech by the members and other like matters not germane to this opin-

ion. Plaintiffs conclude with a prayer for a discovery and accounting, an injunction restraining the appointed officers of the local union from performing the functions of office, and an election of local officers under the supervision of the court.

The local officers appeared generally and filed an answer admitting that no election had been held during the period mentioned, but averring that the members of Local 690 had no right to elect their own officers because of restrictions inherent in their charter. It was also admitted that regular financial reports had not been given to the membership, but it was averred that an audit was presently being made by a firm of public accountants. It was not denied that regular meetings had been suspended, but it was alleged that special meetings would be called "as the circumstances require". Defendants also averred that plaintiffs had not exhausted their remedies within the framework of the United Association.

A hearing was held, in the chambers of the chancellor, at which defendants requested a continuance until an "accounting", then in progress by public accountants, should have been completed. Over the strenuous objection of plaintiffs' counsel the continuance was granted and the matter was permitted to remain in suspension for approximately nine months. At the second hearing, also in chambers, defendants moved for the dismissal of the bill upon the ground that plaintiffs had not exhausted their remedies within the union. Plaintiffs offered to prove that such remedies were, in the circumstances, vain and illusory, but the chancellor erroneously limited the evidence to testimony concerning the steps actually taken by plaintiffs to obtain redress from the tribunals of the United Association. After a brief hearing, the bill was dismissed. Plaintiffs' exceptions were overruled by the court en banc and this appeal followed.

The dismissal of the bill was error. It is admitted by the answer that no election of local officers has been held

for twelve years. Furthermore, it is expressly averred that the members of the local union have been denied the right to elect their officers, and that the "right, power and duty" of selecting these officers is a prerogative of the general officers of the United Association. From the meagre testimony which the chancellor permitted plaintiffs to introduce it appears that they fruitlessly appealed to George Masterton, General President of the Association, for an election. One of the plaintiffs quoted Masterton as saying, "I want to tell you something up there. You fellows have a little autonomy, but if you aren't careful you will have no autonomy at all, and don't forget the General Office controls that local union and your General Executive Board controls that local union and they are going to do so whether you like it or not." A General Organizer, delegated by the General President to meet with plaintiffs is alleged to have said, ". . . if you do get an election of officers we can bring 500 men in here from New York and flood the local and your election wouldn't mean a thing."

At a special meeting of the local union it appears that a majority of the members present voted to permit the General Office to retain its control of the selection of local officers, but the plaintiffs aver that this was accomplished by intimidation, and that at the conclusion of the meeting the General President said, "It makes no difference how you men voted here tonight, we are still going to control this organization whether you like it or whether you don't."

Regardless of whether or not these utterances were made by the General President and his deputy, it is clear that for twelve years plaintiffs and other members of the local union were denied their rights under the Constitution and By-laws of the United Association. Section 99 expressly provides: "Each local union *shall elect* a President, Vice-President, Recording Secretary, Financial Secretary, Treasurer, Inside Guard, Executive Board of five members, Finance Committee of three

members and the necessary Examining Board for the different branches of the trade. Each local union of the United Association has the *right to elect* one or more of their own members as Business Agent or Business Manager, and when they are elected they shall be considered as an Officer of the local union."

Section 126 provides, "*All* officers of Local Unions *shall be elected* for a term of not less than one year, such election to take place on the last meeting night of June, or the last meeting night of December, as may best suit the members of the Local Unions involved."

Section 193 provides, "No part of the Constitution shall be suspended at any time, nor can it be amended, except at conventions or by referendum vote, as provided in foregoing sections." Defendants have pointed to no action by convention or referendum justifying the abrogation of plaintiffs' rights to an election of local officers.

It is urged by defendants, however, that plaintiffs, having failed to secure relief from the General President, were required by the Constitution to appeal from his action, or non-action, to the General Executive Board, where, it is intimated, relief would have been obtained. They invoke the settled and salutary rule of law that the courts will not lend their aid to members of a voluntary association who have failed to pursue the remedies afforded by the association for the settlement of internal disputes. See *Acri et al. v. Bruscia et al.,* 265 Pa. 384, 108 A. 717; *Beeman v. Supreme Lodge S. of H.,* 215 Pa. 627, 64 A. 792; *Lodge No. 19 v. Svi Sveti et al.,* 323 Pa. 292, 185 A. 650; *Bogadek v. Butkovic et al.,* 336 Pa. 284, 9 A. 2d 388. This rule is based upon the premise that the Constitution and By-laws of the association form the compact or contract of membership, from which all of the members' rights are derived.

In the present case, however, there is no "internal dispute" requiring adjudication by the tribunals of the United Association. The right of the members of Local 690 to elect their officers cannot be denied by any officer

or appellate body under the Constitution and By-laws. The denial of that right to the members for a period of twelve years is a clear violation of the constitutional provisions. The appointment and removal of the local officers by the General Office was a manifest usurpation of authority. Where the conduct of union officers is without color of authority and flagrantly in violation of the fundamental laws to which members and officers alike have subscribed, as in this case, those deprived of their constitutional rights by such conduct may appeal directly to the courts without invoking the formal remedies provided for the settlement of internal disputes. Those who have themselves violated the mutual compact cannot complain that others, whose rights they have ignored, have failed to adhere to its letter. See *Rueb v. Rehder*, 174 Pac. 992 (N. M.); *Lo Bianco v. Cushing*, 117 N. J. Eq. 593, 177 A. 102; *Webster v. Rankins*, 50 S. W. (2d) 746 (Mo.); 4 *Am. Jur.* Sec. 13.

Furthermore, when the remedy prescribed by the constitution of an association would be vain, or illusory, or would subject the complainant to unreasonable delay or hardship, it need not be invoked. *Heasley et al. v. Operative P. & C. F. I. Assn.*, 324 Pa. 257, 188 A. 206; *Bailey v. Montgomery et al.*, 177 N. Y. App. Div. 777, 165 N. Y. S. 159; Note, 86 *U. of Pa. L. Rev.* 885, 889 (1938). While there is no testimony that would indicate that plaintiffs' case had been prejudged by the members of the General Executive Board, or that they had actively participated in the appointment of local officers, it is clear that in the exercise of their functions, as set forth in the Constitution and By-laws, they must have been aware of the situation. That they previously took no action to relieve it, despite the fact that under Section 25 the Board has "full discretionary power over all things connected with the Association between conventions", is significant. Had their attitude remained unchanged upon plaintiffs' appeal from the decision of the General President, or from his refusal to decide, plaintiffs would have been obliged

to appeal to the Convention. Such Conventions are to be held every *fourth year,* under Section 45, but only *if,* by referendum, a majority of the membership approve. Obviously, even if the Convention were held every fourth year, as to which there is no certain assurance, an unreasonable delay would have been involved, and in the interim, under Section 26, the order or action appealed from would have remained in effect. Plaintiffs' remedies under the Constitution and By-laws were, therefore, too circuitous and burdensome, since they would deprive them of final determination and legal redress of their grievance for an unreasonably long period of time. In judging the effectiveness and appropriateness of the remedy we cannot assume that, at any particular stage of the appeal, plaintiffs' long-disregarded rights would have been recognized.

In reversing the action of the court below and restoring to plaintiffs their rights under the Constitution and By-laws of the United Association we have no intention to pass judgment on the motives of the defendants in suspending the right of the local union to elect its officers. We have no concern with factions or policies within the local union and the United Association. It may be that the defendants were motivated by the most sincere desire to benefit the membership of the local union, or by pressing practical considerations, and it appears that their actions were condoned by many of the members. Our only concern is with plaintiffs' rights under the fundamental laws of the United Association. The good which has been accomplished by organized labor can best be perpetuated by giving effect to the terms of the voluntary compacts between members of labor unions, which have, as their primary object, the protection of the rights of the members, their self-government, and the advancement of their mutual interests.

The order and decree of the court below is reversed and the bill is reinstated. The court below is directed to order an election of officers by the members of Local

Union No. 690 in accordance with the Constitution and By-laws of the United Association and of the local union, such election to be held under the supervision of the court or a Master or other officer appointed thereby, and to afford plaintiffs such other and further relief as it may appear that justice and equity require; costs to be paid by appellees.