GENEVIEVE H. SIBILIA et al., complainants-respondents,

*v.*

WESTERN ELECTRIC EMPLOYEES. ASSOCIATION, INC., et al.,
defendants-appellants.

[Submitted February 13th, 1948.   Decided May 13th, 1948.]

*Mr. Maurice C. Brigadier,* for the defendants-appellants.

*Messrs. Parsonnet, Weilzman & Oransky,* for the complainants-respondents.

PER CURIAM.

This appeal brings up three orders of the Court of Chancery, advised by Vice-Chancellor Fielder, one dated November 7th, 1947, denying the defendants-appellants' motion to strike the bill of complaint; another dated December 3d, 1947, appointing a master in Chancery to tabulate paper ballot votes cast in an election held by the defendant Western Electric Employees Association, Inc., in September, 1947; and the third, dated December 17th, 1947, confirming the report of the master on the results of his tabulation and appointing a custodial receiver for the union and restraining the officers of the union from continuing to function as such.

It appears that the defendant association is an independent labor organization, not affiliated with any national union, consisting of about 18,000 members, and that it functions through a group of 25 elected employee representatives. Opposition developed to the incumbent representatives and a group of 25 candidates grouped together under the name of the Red, White and Blue Ticket at the election scheduled to be held on September 9th, 10th, and 11th, 1947. The elections are conducted under the auspices of a board of elections of which the defendant Fred J. Ambrose was the chairman at the September election. The other defendant, Frank J. Fitzsimmons, was the president of the association.

The election was held on the appointed days, most of the votes being cast on voting machines rented for the purpose but some of them being cast in the form of paper ballots. At the close of the polls on September 11th the board of elections took the tally of the voting machines. The next day Ambrose announced that the paper ballots would be counted and the results of the election would be made known on September 16th. The totals of the voting machines made it apparent that the Red, White and Blue Ticket was victorious, since their lead was too large to be overcome in the count of the comparatively few paper ballots. Instead of announcing the results on September 16th, the chairman announced that the committee had voted to set aside the election on the ground that the constitution of the association had been violated in the manner in which some of the candidates conducted their

campaigns, by use of advertising and methods other than personal contact as required by the constitution.

On the same day on which this announcement was made, the bill was filed and an order to show cause with temporary restraint signed. The bill sought to enjoin tampering with or destroying the ballots and machines; restraint against the officers' functioning; to compel the canvassing of the votes; and other relief incident to the situation. Subsequently the three orders appealed from were made.

The first point is that the denial of the motion to dismiss the bill is appealable, and respondents do not assert the contrary.

Point two is that the bill should have been dismissed on the ground that Chancery does not have jurisdiction to determine the validity of an election of such an organization, such jurisdiction being solely in the Supreme Court. This is not a case in which the right to hold office is being tried out. It was the conduct of the defendants in throwing out the election after it was held without counting the votes and declaring the result that was under attack. The bill was filed in an effort to prevent the destruction of the ballots and invalidating of the election by improper means; in other words, to preserve the status in order that a basis in facts might exist for the purpose of bringing a *quo warranto* action, if the question of right to hold office had to be determined. Under the constitution these elected representatives hold office until their successors qualify, so no one could claim the right to have qualified and to be entitled to the office unless the count of the votes were completed. Clearly *quo warranto* would not have afforded the relief sought.

Point three is that the bill should have been stricken because it failed to set forth any cause of action for interposition of the court over the judgment and determination of the board of elections and its chairman. The constitution of the association gives the chairman considerable power in procedural matters respecting elections, but it gives no power to void an election after the votes have been cast and nearly all counted. A group could perpetuate itself in office by the tactics attempted unless the Court of Chancery has power to

intervene, since it is evident that *quo warranto* alone would be ineffective.

Point four is that the complainants failed to exhaust their remedies within the association. As stated, the association is an independent union, so there is no parent body to which appeal could be taken. The provision for relief within the association pointed to under this argument is the one dealing with recall, but this requires a two-thirds vote and does not seem to be the kind of relief that must be pursued before coming to the courts.

Point five is that no charge is made of violation of the constitution and by-laws, but the allegations concerning the conduct of the election amounted, if true, to derelictions of duty on the part of the defendant officials.

Point six is that there is insufficient ground in equity for the appointment of a receiver. But it was clearly proper to take management of the association away from the officers who had acted as they did, at least until such time as the proper officers can be determined.

Point seven is that the complainant Genevieve H. Sibilia has no standing to prosecute the action on behalf of the Red, White and Blue candidates, of whom she was not one. At least she has standing as a member of the association and the other complainant was one of the candidates, so there is no merit in this point.

Point eight is that the bill is multifarious. Although there are several phases to the situation, the general purpose of the suit was to preserve matters until the right to office could be settled. It was not a case of joining various unrelated matters in one suit.

Point nine is that the court should have found the action of the chairman and sub-committee was proper, but there is sufficient factual support for the action the court took.

Point ten is that the appointment of the receiver was unjustified, but outside of the conduct of the election, there are other serious charges of mismanagement. It was alleged that $30,000 was spent to conduct the election and that certain employees were paid with the association's funds for time they

took off from work to electioneer for the incumbent representatives.

So, we conclude the orders appealed from should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 13.

*For reversal*—None.