Argued July 1, affirmed as modified July 31, petition for rehearing denied September 4, 1963, petition for attorneys' fees granted as modified March 11, certiorari denied, United States Supreme Court April 2, 1964

# GILBERT ET AL *v.* HOISTING & PORTABLE ENGINEERS, LOCAL UNION No. 701

384 P. 2d 136
390 P. 2d 320

*Clifford D. O'Brien,* Portland, argued the cause for appellants. On the briefs were O'Brien & Perkins.

*Gunther Krause,* Portland, argued the cause for respondents. On the brief were Krause, Lindsay & Nahstoll.

Before McALLISTER, Chief Justice, and ROSSMAN,

Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

## O'CONNELL, J.

This is a suit in equity brought against the Hoisting & Portable Engineers Local 701 by plaintiffs as representatives of all the members of the local union. Plaintiffs pray for the appointment of a receiver, for an accounting, and for other incidental relief.

The gravamen of the complaint is that four of the officers of the local union had failed to follow "democratic processes" in the conduct of the affairs of the union in various particulars. It is charged that these officers were elected as a result of a fraudulent election in which they caused invalid ballots to be cast and that the officers, for the purpose of appropriating union property for unauthorized purposes, have refused to provide for the election of trustees and auditors as required by the bylaws of the union.

The trial court found that plaintiffs had failed to sustain their charge of fraudulent election, or that there had been a misappropriation of funds justifying the appointment of a receiver. However, the court found that defendants, in conducting the affairs of the union, had disregarded the union constitution in certain respects affecting democratic processes.[1] Al-

---

[1] The trial judge's memorandum opinion contains the following statement:

"3. *As to Abolition of Democratic Processes.* This challenge to defendants' conduct of Local 701, its members' meetings, controls, failure to follow constitutional directives, as evidenced by absence of auditors, trustee *appointments,* inability of members to secure requested information regarding funds, elections, etc., constitute the more serious criticism of defendants' operations."

though the trial judge found that there was not sufficient evidence to justify removal of the defendant officers, he considered their previous neglect in observing the democratic processes of the union a ground for setting up safeguards in the conduct of the next union election which was soon to be held. To this end the following order was entered:

"5. For the purpose of participating in supervising the election of officers and officials of the defendant Local 701 in June 1962, the certified public accountant firm of Pattullo and Gleason be and it hereby is appointed by the Court with instructions to report the conduct and results of the election to the Court.

"6. For the purpose of advising the Court as to the assets, income and expenses of the defendant Local 701 the certified public accountant firm of Pattullo and Gleason be and it hereby is appointed to check the quarterly audits of the business of

"4. * * *, we now address ourselves to the *Democratic processes* phase of charge and inquiry. As stated above, I am of the opinion defendants have in certain respects disregarded the constitution. Conduct of meetings (however, only one or two were testified to) has been criticized, and some evidence suggests unlawful means employed when observance of the by-laws would have accomplished the same result. The Financial Secretary and Business Manager, P. R. Wages, has laid himself open to charges of 'Cronyism' and suspicion of selection of officials and committeemen who might be inclined toward Wages' policies and therefore lacking in independence. Generally, it would seem, however, these men have discharged their responsibilities adequately; the situation, however, should never have been permitted to develop when by reason of the manner and method of their selection, their actions might be 'suspect.' What judicial action is suggested in view of the fact in June, 1962, the members will participate in an election which may well resolve at least the most important issues? No serious contention is made that the up-coming election is 'rigged', no such issue appears in the pleadings, nor has it developed on the trial, other than suggestion of continuance of 'Cronyism.' Contests appear on the ballot for major offices."

said defendant and to report thereon to the Court each quarter from date hereof not to exceed one year.

"7. Jurisdiction over this suit is hereby retained by this Court so that any party may bring before the Court any matters within the issues and particularly any failure to comply with the Constitution of the International and the Bylaws of defendant Local 701 and any failure to accord to the membership their rights under the law and the said constitution and bylaws. Either party may move to terminate said jurisdiction at any time."[8]

■ Assuming that there was evidence to support the charge of an abuse of democratic processes in conducting the affairs of the union relating to election of officers, the relief granted was within the power of a court of equity.[9] As we read the record, there was evidence to establish that the defendants failed to observe the union bylaws and constitution relating to the election of trustees and auditors. There also was evidence of irregularities in previous election procedures. This evidence was sufficient to support the

[8] The trial court's memorandum opinion relating to this matter was as follows:

"5. * * * *Let the election take its course.*

"6. And in this connection, I have one suggestion which I feel will promote confidence and accuracy. That is this: Defendants propose an election supervised by CPA's. While there is no indication before me that either of the two CPA's who testified is other than honorable and qualified, I would like to see *David Pattullo,* or Myron Gleason Attorney and CPA designated as *one* of those appointed to supervise the approaching election, reporting to the Court. Also Mr. Pattullo or Mr. Gleason to participate in qtly audits for period of one year."

[9] It is recognized that a court of equity may provide the necessary safeguards to assure a fair union election. See for example, Sibilia v. Western Electric Employees Ass'n., 142 NJ Eq 77, 59 A2d 251 (1948); O'Neill v. United Ass'n of Journeymen Plumbers, Etc., 348 Pa 531, 36 A2d 325 (1944).

order designed to protect the plaintiffs' right to have a fair election.

However, it is contended that even assuming such evidence was produced, plaintiffs have failed to comply with Section 501 (b) of the Labor-Management Reporting and Disclosure Act of 1959, 29 USC § 501 (b), requiring a union member who seeks relief against his union to first request the governing board or officers to sue or secure the appropriate relief and to obtain leave of court before bringing such proceeding.[4]

■ The trial court concluded that the procedure specified in Section 501 (b) was not intended to be binding upon union members bringing actions in courts of a state where there already existed procedures by which a union member could enforce the fiduciary duties of union officers. We agree with this interpretation of the act. Section 501 (b) could be interpreted to mean that the procedure there specified must be fol-

---

[4] Section 501 (b) of the Labor-Management Reporting and Disclosure Act of 1959 (29 USC § 501 b) provides as follows:

"(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation."

lowed in state court proceedings. But Section 603 (a) of the Labor-Management Reporting and Disclosure Act of 1959 indicates the congressional intent to recognize the remedies available in state courts unaffected by the remedies under the federal act unless "explicitly provided to the contrary."[5]

■■ It is not necessary under Oregon law to obtain leave to sue under the circumstances recited in Section 501 (b). Although it is necessary for a complaining union member to exhaust his remedies within the union itself as a condition precedent to judicial relief,[6] the facts in the present case indicate such procedure would have been fruitless.[7] Plaintiffs could not expect relief through a request made to the officer of the local union whose conduct was being challenged. And, although plaintiffs brought the alleged unlawful activities of the defendant officers to the attention of the International Union of Operating Engineers, the International took no action.

We are of the opinion that the controversy was ripe for consideration by the trial court.

---

[5] Section 603 (a) of the Labor-Management Reporting and Disclosure Act of 1959 (29 USC § 523 a) provides as follows:

"Except as explicitly provided to the contrary, nothing in this chapter shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State."

See also Wollett: Fiduciary Problems Under Landrum-Griffin, 13 NYU 13th Annual Conference on Labor 267 (1960).

[6] Fox v. Knight, 221 Or 1, 350 P2d 177, 179 (1960); Way v. Patton, 195 Or 36, 45, 241 P2d 895 (1952).

[7] See Mursener v. Forte, 186 Or 253 at 272, 273, 205 P2d 568 (1949).

Defendants' attack upon the court's jurisdiction is made, not because they object to the judicial supervision of the election but because the court allowed plaintiffs' attorneys fees ($8,500) and reimbursed plaintiffs' counsel for the cost of duplicating and distributing to the union membership copies of the court's memorandum opinion ($222).

■ Defendants object to the allowance of attorneys' fees, first upon the ground that there is no authorization in the Oregon statutes for the allowance of attorneys' fees under the circumstances of this case, and secondly because Section 501 (b) limits the allowance of attorneys' fees to cases where there is the "recovery" of money.[9] Having interpreted Section 501 (b) as merely supplemental to state remedies, it follows that we would not be bound by any limitation which that section imposes upon the allowance of attorneys' fees.

■■ Although defendants' first ground of objection presents a more serious question, we are of the opinion that the allowance of attorneys' fees was proper in this case. The authority of a court of equity to award attorneys' fees is not derived solely from the statutes. Equity may under some circumstances as a part of its inherent equitable powers award attorneys' fees. This power is frequently exercised where the plaintiff brings a representative suit on behalf of other members of an organization, as for example where a stockholder brings a derivative suit against a corporation.

Defendants contend, however, that attorneys' fees

---

[9] The part of Section 501 (b) referred to reads as follows:
"* * * The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization * * *."

are allowed in such cases only if the prosecution of the suit results in a pecuniary benefit. Although there is authority supporting defendants' contention, more recent cases have permitted recovery where there was a non-pecuniary benefit to the corporation.[9] We believe that these recent cases announce the sounder rule.[10] The broader rule is particularly apposite in suits brought by members of a union to correct evils in union management. The preservation of the democratic process in the functioning of unions is a matter of primary concern, not only to union members but to the public as well. Litigation which results in correcting abuses of this process frequently may not give rise to an ascertainable pecuniary benefit. But the fact that no money or property is involved does not detract from the importance of the litigation. Those members of the union who in good faith seek to preserve the internal democracy of their union should not have to bear the expense of a successful suit. We hold that plaintiffs were entitled to attorneys' fees. The fee allowed by the trial court was reasonable.

■ The trial court allowed plaintiffs $222 which was

---

[9] Treves v. Servel, Inc., 154 A2d 188 (Del Sup Ct. 1959); Saks v. Gamble, 154 A2d 767 (Del Ch 1958); Aaron v. Parsons, 139 A2d 365 (Del Ch 1958), affirmed 144 A2d 155 (Del Sup Ct 1958); Yap v. Wah Yen Ki Tuk et al., 43 Hawaii 37, 42 (1958); Bosch v. Meeker Co-op. Light & Power Ass'n., 257 Minn 362, 101 NW2d 423 (1960); Eisenberg v. Central Zone Property Corp., 1 App Div2d 353, 149 NYS2d 840 (1956), affirmed 3 NY2d 729, 163 NYS2d 968, 143 NE2d 516, cert. denied, 355 US 884, 78 S Ct 151, 2 L Ed2d 113 (1957); Martin Foundation, Inc. v. Phillips-Jones Corp., 283 App Div 729, 127 NYS2d 649, affirmed, 306 NY 972, 120 NE2d 230 (1954); Long Park, Inc. v. Trenton-New Brunswick Theatres Co., 299 NY 718, 87 NE2d 126 (1949).

[10] It has been suggested that the rule should be stated even more broadly, permitting recovery of attorneys fees even in the absence of benefit if the public interest is served by bringing the suit. Cf., Note, 13 Stan L Rev 146 (1960); 45 Minn L Rev 164 (1960); Note, 48 Calif L Rev 843 (1960).

the cost of reproducing and distributing to the union membership 4800 copies of the court's order. This is not an item of disbursement within ORS 20.020. However, under proper circumstances a court of equity would have the power to order the defendants to duplicate and distribute copies of the court's opinion or to pay the cost of doing so. But we are unable to find anything in the record other than the statement of plaintiffs' counsel explaining why this cost was imposed upon defendants. Therefore it is disallowed.

The decree of the lower court, as modified by the disallowance of the sum of $222, is affirmed.

**ON PETITION FOR ATTORNEY'S FEES**

Gunther F. Krause, Portland, for the petition.

Clifford D. O'Brien, Portland, contra.

O'CONNELL, J.

Plaintiffs, as the prevailing parties on appeal (*Gilbert et al v. Hoisting & Portable Engineers, Local Union No. 701*), move for the allowance of attorneys' fees in the amount of $3,500 for services upon appeal.

In *Adair v. McAtee,* 236 Or 391, 385 P2d 621, 388 P2d 748, recently decided, we held that "attorney's fees will not be allowed upon appeal in the absence of a statute so providing or in the absence of an express agreement that the prevailing party is entitled to attorney's fees on appeal." We were not there concerned with the right to attorneys' fees where the allowance of such fees is regarded as an essential ingredient in the equitable interest sought to be protected, as it is in the present case.

In *Gilbert et al v. Hoisting & Portable Engineers, Local Union No. 701,* supra, we affirmed an allowance of attorneys' fees for services rendered in the lower court. There (at P. 137, 384 P2d at 139) we noted that "Equity may under some circumstances as a part of its inherent equitable powers award attorneys' fees." It is not necessary, therefore, to look to a statute or an agreement between the parties (as in *Adair v. McAtee,* supra) to sustain plaintiffs' motion in this case.

█ The question is whether the reasoning underlying our decision in *Gilbert et al v. Hoisting and Portable Engineers, Local Union No. 701,* supra, allowing attorneys' fees for services in the court below applies also to attorneys' fees on appeal. In that case we emphasized the importance of providing means by which the democratic process in the functioning of unions could best be preserved. If those who wish to preserve the internal democracy of the union are required to pay out of their own pockets the cost of employing counsel, they are not apt to take legal action to correct the abuse. The elimination of improper practices in union affairs benefits not only the plaintiff who initiates the suit but also inures to the members of the union and the public as well. The cost of employing counsel should not be visited upon the persons who bring the suit and prevail.

█ It is highly important to the public as well as to the union membership that those in control of the administration of the union should not be permitted to exercise their power for selfish and nondemocratic purposes. No obstacle should be placed in the path of union members who, acting in good faith, seek the aid of the courts in an effort to correct abuses of power by union officials. An obstacle would be presented to

such union members if they could initiate proceedings only at the risk of paying the cost of the legal services upon appeal after prevailing in the lower court. The allowance of attorneys' fees both in the trial court and on appeal will tend to encourage union members to bring into court their complaints of union mismanagement and thus the public interest as well as the interest of the union will be served.

We do not mean to suggest that in all equity cases the prevailing party is entitled to attorneys' fees for the appeal. Recovery will be allowed only in the limited class of cases where there is a representative or derivative suit brought for the benefit of the entire organization or where there are other circumstances in which equitable relief would in effect be denied or severely inhibited unless the plaintiff who prevails in the suit is awarded attorneys' fees.

For these reasons we have concluded that plaintiffs are entitled to attorneys' fees on appeal. We think that $1,500 is a reasonable fee under the circumstances.

SLOAN, J., specially concurring.

I agree that attorney's fees should be allowed in this case. My dissent in *Adair v. McAtee,* 236 Or 391, 396, 388 P2d 750, stated the reasons why fees should be allowed in other appropriate cases as well.