Argued and submitted July 27, 1987, affirmed as modified on appeal and affirmed on cross-appeal January 27, Pacific First Federal's reconsideration and Guinasso's reconsideration denied April 22, both petitions for review denied May 24, 1988 (305 Or 672)

GUINASSO et ux,
*Respondents - Cross-Appellants,*

*and*

GUINASSO et al,
*Cross-Appellants,*

*v.*

PACIFIC FIRST FEDERAL
SAVINGS AND LOAN ASSOCIATION,
*Appellant - Cross-Respondent.*

(416-583; CA A37437)

749 P2d 577

Donald J. Morgan, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Peter Livingston and Wood, Tatum, Mosser, Brooke & Landis, Portland.

Phil Goldsmith and Henry Kantor, Portland, argued the cause for respondents and cross-appellants. With them on the briefs were Henry A. Carey, P.C., and Delo, Kantor and Stamm, Portland.

Before Richardson, Presiding Judge, and Warden and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant Pacific First Federal Savings and Loan Association (Pacific) appeals and plaintiffs cross-appeal from the trial court's judgment awarding plaintiffs and the class which they represent unjust enrichment damages and other relief. The controversy arises out of Pacific's failure to pay the class members, between May, 1969, and June, 1975, proceeds derived from Pacific's use and investment of advance reserve payments which the members made to Pacific for taxes and insurance on dwellings for which they had received loans from Pacific. Many of the specific issues that the parties raise are variations of matters which were decided in *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 577 P2d 477, *cert denied* 439 US 1051 (1978), and related cases. Although ORCP 32, which now governs class actions, was promulgated after *Derenco* was decided, that rule does not alter any of the analysis in *Derenco* which is relevant to the issues presented here.

We quote from Pacific's brief the facts which provide an overview of the case:

"During the relevant period, Pacific was chartered as a federal savings and loan association. It employed real property security instruments which required borrowers to deposit monthly one-twelfth of their estimated annual insurance premiums, taxes, assessments, and other public charges with Pacific. The purpose of the requirement was to protect Pacific's security interest in the property.

"Pacific commingled the tax and insurance reserves with other funds held for investment. Pacific retained the income derived from investing the reserves. The security instruments did not mention the investment of reserves or Pacific's retention of income. Pacific's personnel did not routinely inform borrowers of the practice.

"* * * The reserves were invested until the date of payment."[1]

The threshold question is whether Pacific's notice of appeal gives us jurisdiction over the class members and issues pertaining to the class or perfects an appeal only against the representative plaintiffs as individuals. The notice is

---

[1] Other facts will be set forth in our discussion of the arguments to which they are relevant.

addressed to the named plaintiffs Guinasso and their attorney. The caption on the notice refers to those plaintiffs as "husband and wife," and only the two plaintiffs, referred to by name, are designated as adverse parties to the appeal. The copy of the judgment attached to the notice also refers, in its caption, to plaintiffs by name and as "husband and wife." The judgment in the trial court file contains appended exhibits which name the 11,375 class members who filed claim statements, ORCP 32F(2), and the 13,647 who did not. The exhibits also show the share of the judgment to which each person in the first category is entitled. *See* ORCP 32M. However, copies of those exhibits are not attached to Pacific's notice of appeal. The only thing in the notice or the part of the judgment attached to it which indicates that plaintiffs are representatives of a class is the recital to that effect in the judgment.

Plaintiffs contend that the notice succeeds in perfecting the appeal only as to the named plaintiffs as individuals. *See Bourgeois v. Grenfell,* 72 Or App 415, 695 P2d 974, *rev den* 299 Or 313 (1985). Pacific replies that plaintiffs' "argument is silly" and that it elected not to attach the exhibits, because they are voluminous and extraneous. Neither party cites authority which is particularly useful in resolving the issue, and we have not found any.

We conclude that the notice of appeal is sufficient to confer jurisdiction on us over the class action as well as the representative plaintiffs. The principal basis for our conclusion is that the class members are not "parties," within the meaning of ORS 19.029, and they accordingly do not have to be named in or served with the notice of appeal. Plaintiffs do not argue that any of the class members sought to intervene, *see* ORCP 32E(2), or to make an appearance either personally or through counsel, ORCP 32F(1)(b)(vi), or to participate in the proceedings directly, rather than through plaintiffs' representation. We accordingly hold that the absence of any reference to the class members in the notice of appeal is not a jurisdictional defect as to the class.

Plaintiffs also argue that the failure of the notice to refer to the named plaintiffs as class representatives rather than as individuals is a defect of jurisdictional dimension as to the class. We do not agree. Plaintiffs sought individual relief

as well as relief on behalf of the class. Obviously, their names were the same in both capacities, and the notice calls them by name in designating them as the adverse parties to the appeal. If it were necessary to construe the notice of appeal to determine whether Pacific intended to name plaintiffs as individuals, class representatives or both as respondents on appeal, *see Street v. Gibson,* 295 Or 112, 663 P2d 769 (1983), the task would not be formidable. There is no doubt about what Pacific meant to appeal. For the same reason, it is most unlikely that plaintiffs could have been prejudiced by any imperfections in Pacific's notice of appeal. *See Street v. Gibson, supra,* 295 Or at 116. We turn to the merits.

Pacific argues in its first assignment that the Homeowners Loan Act of 1933, 12 USC § 1461 *et seq,* and pursuant regulations of the Federal Home Loan Bank Board preempt state law and preclude the payment of earnings on reserve funds. Therefore, Pacific contends, the trial court erred by applying the Oregon common law principle articulated in *Derenco.* Before it announced that principle, the court held that federal law is not preemptive. Pacific's argument for a different result here is two-pronged: first, certain federal regulations which were in effect at relevant times and which were not considered in *Derenco* have a preemptive effect; and, second, *Derenco's* holding on the preemption issue is not viable after the United States Supreme Court's later decision in *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta,* 458 US 141, 102 S Ct 3014, 73 L Ed 2d 664 (1982).

The regulations to which Pacific points are not expressly preemptive, and the substantive rule of *Derenco* is not inconsistent or in conflict with them. The strongest of Pacific's arguments is based on the provision of 12 CFR 544.1 to the effect that regulated savings and loan associations are "not required to distribute earnings on short-term savings accounts," which include advance payment reserve funds of the kind in question.[2] *See* 12 CFR 541.5. *Derenco* says nothing to the contrary. It does not require payment of earnings on reserve funds when the contract between an association and a borrower or other communications between them make the borrower aware that earnings will not be paid, or when the

---

[2] 12 CFR 545.6-11(c), which relates to the payment of interest on such funds, was promulgated later and does not apply to the period in issue here.

borrower has actual knowledge of that fact. The federal regulation simply provides that distributions of earnings on short-term accounts are not obligatory; there is no inconsistency between that provision and the *Derenco* principle that an association must either pay earnings on reserve deposits or inform the borrower that earnings will not be paid.

Pacific also contends that the regulations preempt state law, because they reflect a federal intent to "occupy the field." That question was decided the opposite way in *Derenco.* Pacific argues, however, that *Fidelity Federal S & L Assn v. de la Cuesta, supra,* and cases decided by lower courts in its aftermath, are to the contrary. The issue in *de la Cuesta* was whether the federal board's regulation relating to "due-on-sale" clauses preempted California law. On the basis of the language of the regulation and the history of its promulgation, the Court held that it did. It then noted:

> "Because we find an actual conflict between federal and state law, we need not decide whether the [federal act] or the Board's regulations occupy the field of due-on-sale law or the entire field of federal savings and loan regulation." 458 US at 159, n 14.

Hence, *de la Cuesta* leaves open the question that *Derenco* purported to answer. To whatever extent state courts and lower federal courts have answered that question on the basis of their extrapolations from *de la Cuesta,* their decisions are not binding on us. *Derenco* is. The trial court correctly concluded that Oregon common law applies.

Pacific's next assignment is that the court erred by certifying the class,[3] because there was abundant evidence that a substantial percentage of borrowers were aware when they obtained their loans that Pacific would retain the income from its investment of the reserve payments. Therefore, Pacific reasons, common questions did not predominate and separate adjudications were necessary. ORCP 32B(3); *see*

---

[3] The trial court defined the class as:

"All borrowers from branches of Pacific First located in Oregon on loans secured by single-family dwellings who made mandatory advance reserve payments of taxes and insurance which were held by Pacific First between May 28, 1969, and June 16, 1975, except for those borrowers whose lending instruments specifically disclosed that Pacific First would pay no interest while holding advance reserve payments."

*Derenco v. Benj. Franklin Fed. Sav. and Loan, supra,* 281 Or at 570-73; *compare Bernard v. First Nat'l. Bank,* 275 Or 145, 550 P2d 1203 (1976). Pacific's third assignment raises the related point that it proved that there was a uniform custom and practice in the industry not to pay earnings on reserve accounts to borrowers.

The court said in *Derenco:*

"Considering that the borrowers who are affected by this opinion are in the many thousands, it would appear that the number of people who were knowledgeable enough to ask anything about the deposits at all is inconsequential. It could be argued that the balance did not inquire because they knew of the custom of loaning institutions making use of such deposits and they assented to it. However, because of the lack of evidence establishing such a custom and because of the other evidence, we believe the inference of the borrowers' lack of awareness of the subject of the beneficial use of the deposits is a fair one.

"* * * * *

"The relationship between each borrower and defendant could vary according to what each borrower knew concerning defendant's practice of using the deposits. Borrowers who, at the time of borrowing the money, knew of defendant's use would be bound by their knowledge. It is plaintiff's burden to demonstrate that it is not 'likely' that separate adjudications will be required to resolve this issue in 'numerous' instances.

"* * * * *

"In our prior discussion in this opinion of the borrowers' knowledge of custom, we referred to the testimony of defendant's loan officer concerning the frequency of inquiries by borrowers about earnings from the deposits, which testimony indicated that the instances in which the question of the use of the money even occurred to borrowers were isolated and infrequent. Also, we draw the inference from the documents which borrowers were required to execute and from the testimony that borrowers were not told of defendant's use of the money.

"In addition, we have a different situation here than we did in [*Bernard v. First Nat'l. Bank,* 275 Or 145, 550 P2d 1203 (1976)]. The class in the instant case is made up of homeowners, whereas *Bernard* dealt with a class of 'commercial' loan borrowers. Although the loans in that case were not all strictly commercial (in fact, the majority of them were not),

nevertheless, the evidence indicated there were a substantial number of such borrowers who, it was reasonable to assume, likely would have had knowledge of the banks' method of charging interest. We conclude from the evidence in this case that the contrary is true concerning the knowledge of members of the class about defendant's use of the deposits for its own benefit. As is indicated from a previous quotation from [V Scott on Trusts § 530 at 3684-85 (3d ed 1967)], it is probable that few borrowers even thought of the matter at all, and it is reasonably certain that 'numerous' of their numbers were not told of it.

"It would be difficult to imagine a situation in which the circumstances surrounding separate contracts were more likely to be the same as they are in the present case. We have a uniform class of borrowers who were submitted an identical (insofar as material here) adhesion contract under strictly regimented procedures. The only unknown factor is the knowledge of each borrower concerning the use of the deposits by defendant for its own purposes. It is our conclusion that the proof here indicates that it is 'unlikely' that 'numerous' members of the class possessed such knowledge or that the subject of the beneficial interest in the funds even occurred to them. It is therefore proper that this proceeding continue as a class action. In answer to the possible argument that no claims arising out of separate contractual situations are proper for class action treatment, we acknowledge that there is no doubt they present special problems. However, had it been the intention of the legislature to exclude contractual situations from class action relief, we believe it would have said so. We doubt that a situation otherwise suitable for a class action will ever be found where there is a greater probability of identity of separate contractual circumstances than that which exists in this case." 281 Or at 555, 570, 571-73. (Footnote omitted.)

Pacific's evidence of both borrower knowledge and industry custom was more elaborate than that of the defendant in *Derenco*. It consisted, in the first instance, of survey evidence and the testimony of particular borrowers and, in the second, of expert evidence and borrower testimony concerning savings and loan association practices. We conclude, as did the trial court,[4] that the number of potential class members whom Pacific's evidence showed may have had the requisite

---

[4] The parties appear to agree that this is an equitable proceeding and that our review is *de novo*.

knowledge, discounted by the unreliability of their memories of what they knew, does not overcome the inference that unawareness predominates or the *Derenco* standards for determining whether common questions predominate.

We are also unpersuaded by Pacific's evidence of industry custom, and we agree with the trial court's finding that "the claimed custom lacked the degree of universality required to constitute an affirmative defense." Moreover, the evidence was wholly unconvincing of any likelihood that significant numbers of borrowers were aware of the purported customary practice. *See Derenco v. Benj. Franklin Fed. Sav. and Loan, supra,* 281 Or at 553-54. We reject Pacific's second and third assignments. Its fourth, fifth and sixth do not warrant discussion, and we also reject them.

■ Pacific contends in its seventh assignment that the court erred by awarding attorney fees to plaintiffs. The court ordered the fees to be paid from "the total fund * * * which as of the date of final judgment has not been claimed by class members." In the event that that fund was insufficient or was held on appeal to be an invalid source of attorney fees, the court ordered that the balance or the total amount of fees be paid by Pacific. Pacific argues that an unclaimed fund of the kind contemplated by the trial court cannot exist under ORCP 32F(2), because the amount of the final judgment cannot be determined until all claim statements have been filed. Although that may be correct, *see Benj. Franklin Fed. Sav. and Loan v. Dooley,* 287 Or 693, 601 P2d 1248 (1979), it is academic. ORCP 32F(2) *also* specifies that the judgment may include attorney fees, over and above the claims of class members. The order awarding attorney fees does that, in effect, by making any insufficiency payable by Pacific.

■ The more important contention that Pacific makes is that there was no basis for an award of attorney fees. It argues, *inter alia,* that the trial court erred by relying on *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 384 P2d 136, 390 P2d 320 (1963), *cert denied* 376 US 963 (1964), and *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975), as authorities for the award. Pacific argues that those cases contemplate an award of attorney fees only to those plaintiffs whose equitable actions vindicate *nonpecuniary* rights of members of the public. Plaintiffs correctly state that Pacific's argument "stands *Gilbert* on its head." The

court in *Gilbert* rejected the contention that *only* the accomplishment of a general or public pecuniary benefit could serve as the basis for a representative or derivative plaintiff's recovery of attorney fees. It did not suggest that the converse was so, and clearly assumed that it was not. 237 Or at 137-38.

■ In its eighth assignment, Pacific challenges the amount of the award of attorney fees, arguing, *inter alia,* that, because "plaintiffs' counsel recovered substantial attorneys' fees * * * in [*Derenco* and a second 'companion' case][5] decided earlier, an award of $585,000 for the third bite at the apple is unwarranted." Plaintiffs respond that, notwithstanding those earlier decisions, Pacific "vigorously contested certification, liability and damages." Plaintiffs are correct. Plaintiffs did not take a third bite at one apple. They brought this action to establish their and the class members' right to a different apple of the same kind as the defendants in the earlier cases had wrongfully withheld from the plaintiffs in those cases. The attorney fees award was within the court's discretion.

■ Pacific's next assignment is that the court erred by awarding prejudgment interest. It contends that the amount of damages was not ascertained or ascertainable by simple computation *until* the trial judge set the formula for damages. The equation the court established to measure damages was the "applicable passbook savings rate in effect, less one percent (1%), times the reserves." That formula *rendered* the damages easily ascertainable by simple computation. Accordingly, prejudgment interest is allowable under our reasoning in *Banister Continental Corp. v. NW Pipeline Corp.,* 76 Or App 282, 292-93, 709 P2d 1103 (1985), *vacated* 301 Or 763, 724 P2d 822 (1986). Although the Supreme Court vacated our decision, it did so "[w]ithout expressing an opinion on the merits," 301 Or at 764, and we reaffirm our reasoning in *Banister.*

Pacific next argues that it was error for the court to order that the prejudgment interest be compounded annually. In *Stephan v. Equitable S & L Assn.,* 268 Or 544, 522 P2d 478 (1974), the court held that compound annual interest was recoverable against the defendant trustee. It relied on and quoted 1 Restatement (Second) Trusts, § 207, *comment d* (1959):

---

[5] Both cases involved defendants other than Pacific.

" 'If the trustee uses trust funds in his own business and it does not appear how much he has earned thereon, he is ordinarily chargeable with compound interest on the ground that he probably received a return from the trust fund so used at least equal to compound interest.' " 268 Or at 574-75.

■ Pacific states, correctly, that it was not acting as a trustee. It then contends that *Stephan* lends no support for the compounding of interest when the defendant is not acting as a trustee and did not engage in fraud or comparably culpable misconduct. We disagree. Whether a holder of funds acts as a trustee or in some other capacity, compound interest is appropriate when (1) the holder uses another's funds for its own benefit, (2) the exact amount of earnings on that beneficial use is unknown and (3) the holder "probably received a return * * * at least equal to compound interest." We conclude that the rationale of *Stephan* and the *Restatement* comment on which it relies applies to defendants who improperly avail themselves of the beneficial use of another's money, and does not depend on the capacity or relationship which gives them access to the money. Pacific comes within that rationale, and we reject its argument.[6]

Pacific's last assignment is that the court erred by allowing plaintiffs' costs of $11,278.16 for an expert witness fee. We agree that that was error. *Hancock v. Suzanne Properties, Inc.,* 63 Or App 809, 666 P2d 857 (1983).

Plaintiffs raise three assignments in their cross-appeal. The first two pertain to Pacific's borrowers from the state of Washington, who were excluded from the class by the trial court. Both assignments fail unless we overrule *Powell v. Equitable Savings,* 57 Or App 110, 643 P2d 1331, *rev den* 293 Or 394 (1982), as plaintiffs urge that we do. We adhere to that decision.

Plaintiffs' third assignment challenges the trial court's formula for computing damages. They argue that the court should have used the passbook rate as the multiplier, as the court in *Derenco v. Benj. Franklin Fed. Sav. and Loan,*

---

[6] Pacific does not argue that, and we therefore do not decide whether, *Stephan* and the *Restatement* comment contemplate the compounding of interest only when the interest is awarded as compensatory damages. That was the case in *Stephan;* it is not the case here.

*supra,* did, rather than that rate less one percent. We agree with Pacific that *Derenco* does not compel the use of the passbook rate times the reserves as an exclusive formula, applicable in all cases. We understand *Derenco* to hold that, under the facts there, the straight passbook formula most accurately approximated the difference between the defendant's gain from the reserves and its servicing costs. *See* 281 Or at 561-63. We also agree with the trial court and Pacific that the prevalent evidence here is that the one percent diminution factor results in a better approximation of Pacific's unjust enrichment than would an unadjusted passbook rate multiplier.

On appeal, judgment modified to reduce costs and disbursements awarded plaintiffs by $11,278.16 and affirmed as modified; affirmed on cross-appeal.