# IN THE OREGON TAX COURT

Thomas P. DENNEHY
*v.*
DEPARTMENT OF REVENUE
(TC 2395)

Gregory J. Howe, Pfister, Tripp & Mendez, P.C., Portland, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision part for plaintiff and part for defendant rendered February 6, 1989.

## CARL N. BYERS, Judge.

This matter is before the court on remand from the Oregon Supreme Court. Plaintiff's complaint in this court challenged the constitutionality of the calculation of the tax rate for urban renewal property under ORS 457.440(1) and the rounding up of tax rates under ORS 310.090. This court denied plaintiff relief on any ground and plaintiff appealed to the Oregon Supreme Court. That court, by opinion dated May 17, 1988, affirmed in part and reversed in part, and remanded the case to this court for such further proceedings as this court deems necessary and consistent with the Supreme Court's decision.

■ The Supreme Court affirmed the decision of this court as to the calculation of tax rates for urban renewal property under ORS 457.440. However, the Supreme Court found that the practice of rounding up in calculating the tax rate under ORS 310.090 violated Article XI, section 11, of the Oregon Constitution. That finding necessitated remanding the case to this court to address the issues of:

1.   The proper administration of ORS 310.090;

2.   The disposition of any sums in excess of the permissible levies that resulted from rounding up; and

3.   The awarding of attorney fees to plaintiff.

The parties have submitted memoranda, presented oral arguments and responded to specific questions posed by the court.

*Proper Application of ORS 310.090*

In determining that the practice of rounding up under ORS 310.090 violates the constitutional limitation, the Supreme Court acknowledged the difficulty of calculating the tax rate. Its opinion noted that several options are possible, including legislative changes.

In response to the Supreme Court's holding, defendant amended OAR 150-310.090 as of July 14, 1988. The amended rule provides for calculating the tax rate by carrying out the amount to seven digits and then truncating. This effectively provides for a rounding down rather than a rounding up. Plaintiff acknowledges that this is an acceptable solution to the constitutional limitation.

*Disposition of "Excess" Taxes*

The Supreme Court's opinion indicates that this court should consider "what disposition is required with respect to any sums in excess of permissible levies that are found to have resulted from rounding up minor fractions." Defendant questions whether any excess taxes have been collected. It argues that there has been no determination that any tax levying body has actually collected more than the amount of its levy. This argument, however, ignores the fundamental finding of the Supreme Court.

The Supreme Court held that the challenged computation, which translates the levy into a rate of levy, violates the Constitution. In so doing, the court rejected the notion that the rate of levy could be adjusted to reflect uncollectible taxes. This being the case, determining the amount of excess taxes does not require consideration of the amounts actually collected. Rather, the court needs only to determine the amounts that were levied as a result of the rounding up. If the practice of rounding up violates the Constitution, its application necessarily results in excess taxes. The amount of the excess can be determined taxpayer by taxpayer or tax levy by tax levy.[1] For reasons set forth below, this court finds it unnecessary to make a general determination.

In determining the disposition of any sums in excess of permissible levies, it is necessary to distinguish between plaintiff and all other taxpayers. Plaintiff sued in his name only and did not purport to act as a representative of other taxpayers. Plaintiff's complaint sought only to obtain a corrected tax statement, to correct his tax liabilities and relief

---

[1] Both parties recognize that not all property taxes are subject to the limitations of Article XI, section 11, of the Constitution, such as taxes imposed to pay bonded indebtedness. These amounts would have to be considered in any determination of excess taxes due to rounding.

from the interest accrued on his unpaid 1983-84 tax bill.[2] The only allegation in plaintiff's amended complaint that indicates the pursuit of any interest on behalf of others is paragraph 33, which states:

> "Plaintiff is entitled to an award of his attorney's fees because he has acted as a private attorney general protecting rights of property taxpayers under the Oregon Constitution."

■　　　This court finds that plaintiff did not, by his lawsuit, seek a refund of taxes paid for all other taxpayers. As to plaintiff's property and the taxes imposed thereon, plaintiff has preserved his right of appeal. Plaintiff is entitled to be relieved of those taxes levied on his property which are attributable solely to the rounding-up practice. As to those amounts, if plaintiff has paid such taxes, they are to be refunded in accordance with the provisions of ORS 311.806 and ORS 311.808.

■　　　As to other taxpayers, plaintiff argues that the decision of the court must be applied retroactively in order to give effect to the Oregon Constitution. In focusing on the issue of retroactive application, both parties contend that the three tests set forth by the United States Supreme Court in *Chevron Oil Co. v. Huson,* 404 US 97, 92 S Ct 349, 30 L Ed 2d 296 (1971), support their respective positions. That case looked at the three criteria identified in *Linkletter v. Walker,* 381 US 618, 85 S Ct 1731, 14 L Ed 2d 601, (1965), generally labeled: reliance, purpose and inequity. In *Chevron,* the court held that: (1) a decision should not be applied retroactively if it established a new principle of law not foreshadowed by prior decisions (reliance factor); (2) the court should determine if retroactive application will advance or retard operation of the new rule (purpose factor); and (3) the court must weigh the equities to determine if prospective application is necessary to avoid injustice or hardship (inequity factor). DeLong, *Confusion in Federal Courts: Application of the "Chevron" Test in Retroactive-Prospective Decisions,* 1 U Ill L Rev 117 (1985).

---

[2] There is no provision which authorizes the court to waive the interest accrued on plaintiff's unpaid 1983-84 taxes as requested. Of course any interest accruing on that portion of the taxes which exceed the constitutional limit is automatically "cancelled" since that portion is cancelled.

While the *Chevron* case is helpful, it is important to note that it is not binding on state courts. State courts are free to develop their own tests. *Great Northern Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 US 358, 364, 53 S Ct 145, 77 L Ed 360 (1932). It should also be kept in mind that *Chevron,* and other federal cases applying the *Chevron* test, may well involve different considerations than those pertaining to a state tax case.

Plaintiff argues that in this case no new principle of law was announced. In the circumstances present, however, that narrow question seems inadequate. An equally important question is whether someone had relied upon the disallowed administrative practice. Plaintiff is contending that the tax levying bodies should be required to refund the excess taxes. The tax levying bodies did not make the error nor are they parties to this litigation. It is the Department of Revenue which erred in interpreting the statute and instructed the assessors to round up. The Department of Revenue is not the party who has to make the refunds. In this case no one acted in bad faith. The tax levying bodies, which are to be affected by whether the decision is applied prospectively or retroactively, were innocent bystanders. Moreover, the statutes require the tax levying bodies to rely upon defendant's administrative interpretation of the statutes. ORS 294.495.

Will the purpose of the new rule be furthered by retroactive application? Here the objectionable administrative practice was quickly terminated by the defendant changing its rule. As the state agency with responsibility for enforcement and application of the tax laws, defendant has complied with the court's decision and eliminated the problem. Applying the decision retroactively will do nothing to enhance the administration of the statute.

Will applying the decision retroactively cause hardship or injustice? The answer here is uncertain for lack of specific facts but reason suggests an affirmative answer. While the amounts to be refunded to individual taxpayers may be small, the cumulative amounts that must be paid by the tax levying bodies could be substantial. Plaintiff indicates in its brief that the minimum amount could be $9 million, while the maximum amount, with interest, would be $27 million. What would be the purpose of refunding those taxes—to establish that rounding up was wrong? That already has been done and

corrected. Is it to reimburse the individual taxpayers? If all taxpayers are affected, reimbursement appears to be either too costly or impractical.

The circumstances of this case make a fourth criterion both relevant and persuasive.[3] That criterion is the degree to which the interests of the affected persons are congruent. Plaintiff's position assumes that the interest of the taxpayers and the interest of the tax levying bodies are in opposition. The fact is those interests are very close kin. The practice of rounding up affected virtually every property taxpayer in Oregon. When all taxpayers seek a refund from a tax levying body, they must recognize that they are the source of the refunds. As the character of the comic strip "Pogo" puts it, "We have met the enemy and it is us." What benefit is to be had from refunding taxes if all the taxpayers are affected? If the taxpayers obtaining the refunds are the same taxpayers that must pay the taxes used to make the refunds, there is only an added cost to process the refunds. This is a very different case from the usual one where a single taxpayer, or even a limited number of taxpayers, seek refunds.

In saying that all taxpayers are affected, the court is not saying that those taxpayers who must pay the taxes, which are the source of the refunds, are the same taxpayers who will receive the refunds. To the contrary, plaintiff recognizes that due to changes in property ownerships some of the taxpayers who would now receive a refund did not pay any excess taxes. Plaintiff seeks to avoid this concern by emphasizing that property taxes are levied on property and not people. That may be, but it is people who pay property taxes and it is people who benefit from the services purchased by those taxes. Police and fire protection, public education and a myriad of other services are for the benefit of people, not just property. It is readily apparent that if the excess taxes in question were used to buy public services which one group of taxpayers enjoyed, there is no equity in requiring a different group of taxpayers to now reimburse them. Further, plaintiff acknowledges that the inevitable changes in properties and their values create anomalies which make for inequities. Changes in the boundaries of

---

[3] For a discussion of numerous other criteria considered by the courts in this area, see Tatarowicz, *Right to A Refund for Unconstitutionally Discriminatory State Taxes And Other Controversial State Tax Issues Under the Commerce Clause,* 41 Tax Lawyer 103, particularly at 116-44 (No. 1, Fall 1987).

taxing districts, shifts in valuation, the destruction of some improvements and the erection of others would result in some taxpayers receiving larger or smaller refunds than the amount of the excess taxes paid on their properties.

The court cannot ignore the administrative costs of making the refunds plaintiff seeks. Plaintiff's own case is a good example. The excess taxes that would have been collected from plaintiff for one year, as alleged in his amended complaint, is $2.55. It is probable that the administrative cost of publicizing the right to refunds, producing application forms, processing and verifying those forms, and producing and mailing the refund checks would exceed the amount of the refund itself. Those costs would be imposed on taxpayers who had no part in the calculation of the tax rate and who had no control over the method by which the tax rates were calculated.

It is possible to avoid the administrative costs of refunds by simply ordering that the excess taxes be deducted from the next levies imposed by the tax levying bodies. That solution, however, is less than acceptable. All that does is deprive the tax levying bodies of the ability to raise the full amount otherwise permitted by the Constitution as penance for defendant's error. The solution benefits no one today and no one in the past.

Plaintiff argues that any strain on a tax levying body's budget could be "cured in a stroke" by the voters approving a levy outside the tax base. There is some merit in this position in that it places the decision in the hands of the people who must pay the taxes. However, elections are not free. Moreover, there is much chance of confusion. What will be accomplished if the court orders a refund by offset of the next tax levies? The people will be asked to approve a levy outside the base amount. Their tax statement would explain that their tax has been reduced due to a refund ordered by the Tax Court and increased by the special levy. The two amounts would offset each other and the person's tax bill would be the same as if no refund had been ordered. The court sees little benefit to such a procedure in view of the inequities and confusion that must inevitably follow. Plaintiff's desire to vindicate the rights of the taxpayers in this matter is understandable. But where the problem is statewide and affects virtually all

taxpayers, a broader view of the solution must be taken. Under the circumstances present in this case, the court will not apply the Supreme Court decision retroactively.

*Attorney Fees*

■    The final issue to be resolved by the court is the allowance of attorney fees for plaintiff. Although the Supreme Court appears to have assumed that plaintiff is entitled to recover attorney fees, this court believes that the question of the award, as well as the amount, must be examined.[4] The general or American rule is that no attorney fees shall be awarded in the absence of a statute or agreement expressly providing therefor. *Riedel v. First National Bank,* 287 Or 285, 598 P2d 302 (1979).

■    In this case, plaintiff has alleged that he has acted as a private attorney general protecting the rights of taxpayers and, therefore, is entitled to attorney fees. The concept of compensating one who acts as a private attorney general has received increased support as a result of numerous civil rights and constitutional cases. Falcon, *Award of Attorneys' Fees In Civil Rights And Constitutional Litigation,* 33 Md L Rev 379 (1973). Although no Oregon case authorizes awarding attorney fees on a "private attorney general" theory alone, it does not preclude the court from considering some other basis. *Cook v. Employment Division,* 293 Or 398, 649 P2d 594 (1982). The power of an equity court to award attorney fees has been exercised in Oregon where the court found that the "allowance of such fees is regarded as an essential ingredient in the equitable interest sought to be protected * * *." *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 140, 384 P2d 136, 390 P2d 320 (1964). In *Deras v. Myers,* 272 Or 47, 66, 535 P2d 541 (1975), the court found that where plaintiff sought to preserve "individual liberties guaranteed against governmental infringement" there was even a stronger case for the awarding of attorney fees than in the *Gilbert* case.

However, attorney fees will not be awarded in every case. As the court, in *Gilbert v. Hoisting & Port. Engrs.,* 237 Or, at 142, indicated with regard to attorney fees on appeal:

---

[4] The Supreme Court Opinion states:

  "Because the case must be remanded, we also leave to the tax court initial determination of the amount of attorney fees to which plaintiff is entitled."

"We do not mean to suggest that in all equity cases the prevailing party is entitled to attorneys' fees for the appeal. Recovery will be allowed only in the limited class of cases where there is a representative or derivative suit brought for the benefit of the entire organization or where there are other circumstances in which equitable relief would in effect be denied or severely inhibited unless the plaintiff who prevails in the suit is awarded attorneys' fees."

In addition, as the court, in *Lewis v. Dept. of Rev.*, 294 Or 139, 653 P2d 1265 (1982), pointed out, the plaintiff seeking recovery of attorney fees must plead entitlement thereto and prevail. In that case, plaintiff was successful in his contention that a gender-based exemption statute was unconstitutional. However, he did not prevail because the court held that the statute was void and no one was entitled to the exemption. As a final observation, it would appear that the principle should be applied with great caution in cases of taxation. If the legislature wanted successful property tax litigants to recover attorney fees, it could expressly so provide. It has not done so. Accordingly, limiting the awarding of attorney fees to cases of general public benefit, such as substantive constitutional issues, seems appropriate. *Umrein v. Heimbigner,* 53 Or App 871, 632 P2d 1367 (1981).

After reviewing the circumstances of this case, it appears to the court that it is appropriate to award plaintiff attorney fees. Although plaintiff sued in his name only and his complaint seeks relief only for himself, the relief sought was declaratory in nature. Plaintiff succeeded in stopping the collection of unconstitutional taxes, thereby benefiting all property taxpayers. As indicated above, plaintiff did allege entitlement in his complaint to attorney fees on the theory of private attorney general. Thus, defendant cannot complain that it was not put on notice of plaintiff's claim to attorney fees. Finally, plaintiff has prevailed on one of the three claims (exclusive of the claim for attorney fees) made in this court and on appeal. While plaintiff's refunds are nominal, plaintiff prevailed in having the practice of rounding up declared unconstitutional.

Because plaintiff prevailed on only one of three claims, the court finds that plaintiff is not entitled to recover attorney fees for work performed on issues which he lost. Generally, attorney fees awarded on the basis of a statute or

agreement do not make this distinction. (Although, comparative negligence statutes have impacted the awarding of costs. *See Greenberg v. Pacific Tel. & Tel. Co.,* 97 Cal App 3d 102, 158 Cal Rptr 558 (1979).) In this case, the very nature of the award requires the court to consider the equities involved and the extent to which the plaintiff has benefited society. It would be incongruous to award plaintiff attorney fees for work done on an issue plaintiff lost. *Richardson v. Communication Wkrs. of America,* 530 F2d 126 (8th Cir 1976).

Judgment will be entered consistent with this opinion.